ALLSTATE INSURANCE COMPANY,
Plaintiff-Appellee,

v.

Kenneth D. STEINEMER, Defendant,

James A. Pattison, Defendant-Appellant.

No. 83–3055.

United States Court of Appeals,
Eleventh Circuit.

Jan. 27, 1984.

Paul B. Irvin, Winter Park, Fla., for defendant-appellant.

Richard G. Wack, Lora A. Dunlap, Orlando, Fla., for plaintiff-appellee.

Before FAY and HENDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

The sole issue in this appeal is whether the district court erred in granting summary judgment to appellee, Allstate Insurance Co. (Allstate), on the ground that the conduct of Allstate's insured, Kenneth Steinemer, which led to appellant's, James Pattison's, injury, was intentional and thus excluded from coverage under the Allstate homeowner's policy. We hold that the district court erred, and therefore we reverse.

## I. BACKGROUND

This appeal arises from a declaratory judgment action brought by Allstate in the United States District Court for the Middle District of Florida, Orlando division, to resolve uncertainty over Allstate's duty to defend and indemnify Steinemer for bodily injuries sustained by Pattison. All parties agreed on the relevant facts and moved for summary judgment on the insurance coverage question. The district court held a hearing, and after reviewing the case entered judgment for Allstate on December 20, 1982.

The facts are undisputed. On October 5, 1981, Steinemer fired a BB gun at Pattison, accidentally hitting Pattison in the eye, thereby causing him severe injury. At the time of the accident Steinemer, age 19, and Pattison, age 21, were good friends who had known each other for several years. During the week before the accident the two men, both of whom were unemployed, occupied much of their time playing with a BB gun owned by Pattison. The BB gun was a pump type gun, which used air to propel BB's. Each pump of the gun would increase the amount of air, and therefore the amount of force, used to propel a BB.

During the days before the accident, Steinemer and Pattison had been "playing around" with the gun by "shooting air," that is, using the gun without loading it with BB's. On the day of the accident Steinemer purchased the gun from Pattison for five dollars. As the two headed to Steinemer's house to complete their transaction, they stopped at a convenience store to buy some BB's. They then went behind the store, where Steinemer loaded the gun and fired it several times at leaves and other objects. This was the first time that Steinemer had had an opportunity to fire the gun while it was loaded.

After a few minutes Steinemer pumped the BB gun three times, held it at his waist in "gunslinger" style, and shot Pattison in the chest. In his deposition, Steinemer testified that Pattison then stated, "Ow, that hurt. You are only supposed to pump it up once." Pattison testified in his deposition

that he told Steinemer that the first BB did not hurt and that he instructed Steinemer that "if you ever shoot anyone, just pump it up one time. It will just hit short and not very far and not hurt, too." The first shot did raise a small welt on Pattison's chest.

Approximately a minute later Steinemer pumped the gun only one time, and again shooting gunslinger style and aiming at Pattison's stomach, fired another BB at Pattison. This time the boys' "stupid game" ended in tragedy, as the BB struck Pattison in the eye, causing a severe injury. Steinemer stated that he had intended for Pattison to "feel [the BB], not to sting," and that he did not mean to "hurt" Pattison.

## II. DISCUSSION

The issue before the district court was whether, as a matter of law, Steinemer's conduct was such as to fall within an exclusion in the Allstate homeowner's policy maintained by Steinemer's parents which stated, "We do not cover bodily injury or property damage intentionally caused by an insured person." The district court found that Steinemer's conduct fell within the exclusion, and therefore granted Allstate's motion for summary judgment. On appeal from the granting of a motion for summary judgment, we employ the same standard of review as used by the district court in the first instance. Our review encompasses two issues—whether there was a genuine issue of material fact and the propriety of the judgment as a matter of law.

Appellant, James Pattison, argues that although the facts were not in dispute, a jury issue existed over the inference those facts raised as to Steinemer's intent when he fired the BB gun at Pattison the second time. We agree. As discussed below, we hold that the undisputed facts are sufficient to raise an inference that Steinemer lacked the intent to harm Pattison.[1] Therefore, we remand this action to the district court for trial.

■ To understand why the district court erred in concluding that no genuine issue of fact existed, we look at the requirements of Florida law. Although the Florida Supreme Court has yet to rule, we believe the standard enunciated by the lower courts of Florida adheres to the majority rule with respect to "intentional injury" exclusions. Under the majority rule the exclusion applies if the insured intended to do a particular act, and intended to do some harm, even if the harm actually done was radically different from that intended. *See Hartford Fire Insurance Co. v. Spreen,* 343 So.2d 649 (Fla. 3d Dist.Ct.App.1977) (no insurance coverage for man who intentionally struck another man in face with fist, causing severe injury, but intending only to do minor harm). On the other hand, an "intentional injury" exclusion will not apply if the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence. *Id.* at 641; *see, e.g., Phoenix Insurance Co. v. Helton,* 298 So.2d 177 (Fla. 1st Dist.Ct.App.1974) (insurance exclusion does not apply where man injured member of crowd as he drove car slowly into crowd thinking crowd would disperse [2]).

1. Although the district judge's order granting Allstate's motion for summary judgment fails to state the grounds upon which he relied, his reasons for granting the motion are set forth in the transcript of a hearing he held on November 9, 1982. There the district court indicated its belief that Steinemer did intend to harm Pattison ever so slightly, by firing the second BB at Pattison. At one point the court stated that Steinemer fired "intentionally to make him [Pattison] feel it," and later the court stated, "But here there is no dispute that what Steinemer intended to hit was Mr. Patterson [sic]. Certainly not in the eye, but he did intend to hit him with the thing." We have no problem with the district court's findings of fact in this regard, but, as discussed further into the opinion, we hold that an intention to make one "feel" something is not the same, as a matter of law, as an intent to harm someone.

2. For an excellent discussion and summary of Florida law regarding "intentional injury" exclusion clauses, *see Clemmons v. American States Ins. Co.,* 412 So.2d 906, 908 (Fla. 5th Dist.Ct.App.1982).

Allstate asserts, without citing any authority, that a minority rule adhered to by some states

Allstate argues that this case is not one of gross negligence, in which Steinemer meant no harm to his companion but easily could have foreseen the injury had he thought about it. Rather, Allstate argues that Steinemer meant for Pattison to "feel" the second shot, and perhaps for it to "sting" him, and that therefore this case falls into the realm of intentional harm.[3] Allstate's argument is untenable.

First, we note that an intention for one to "feel" something is a far cry from an intention to harm or hurt someone, even slightly. One intends for another to "feel" a handshake or a hug or a tap on the shoulder, without intending any harm. Similarly, a baseball pitcher may intend for his catcher to "feel" a good hard pitch, and may even expect it to sting, but he does not intend harm. If harm should result from an overly effusive handshake or a particularly hard pitch, we are not prepared to hold that the harm falls within an insurance exclusion for intentional conduct.

█ In this case there is no direct evidence that Steinemer intended to harm his friend Pattison, even slightly. Steinemer may have intended Pattison to feel the BB from his second shot, and may have even expected it to "sting" a bit. We note, however, that Steinemer denied intending the BB to sting Pattison, a fact which is uncontradicted in the record. Allstate places much reliance on the fact that the first time Steinemer shot Pattison, after pumping the BB gun three times in apparent ignorance over the force those pumps would produce, the shot raised a welt on Pattison's chest and caused him to say, "Ouch, that hurt." But Allstate ignores the fact that after Pattison informed Steinemer that if he

holds that if the volitional act that results in injury is intentional, the insurance exclusion applies, no matter what result the insured intended, as long as the result was the natural and probable consequence of the insured's act. *Cf. Argonaut Southwest Insurance Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973). Allstate asserts that if that rule were applied to this case, Allstate would be required only to show that Steinemer intentionally aimed the BB gun at Pattison and intentionally pulled the trigger. We have examined a number of cases that seem to state a rule similar to that cited to us by Allstate as a minority rule, but find that in all of those cases the insured intended to inflict some harm, but caused more damage than intended. *See, e.g., Iowa Kemper Insurance Co. v. Stone*, 269 N.W.2d 885 (Minn.1978) (boys had fight to settle differences; one boy suffered head injury, unintended by other boy, resulting in epilepsy). The courts often use language similar to Allstate's "minority rule" to show that the natural and probable consequences of certain conduct is so certain to result in injury that the insured must have intended harm. *See, e.g., Parkinson v. Farmers Insurance Co.*, 122 Ariz. 343, 594 P.2d 1039, 1041 (Ariz.App. 1979) (when insured argued with acquaintance who wanted to commit suicide, then threatened victim with loaded rifle "to frighten him ... into giving up suicide," court could infer intent to harm where there was additional evidence suggesting insured intended to fire).

One Florida case, *West Building Materials, Inc. v. Allstate Insurance Co.*, 363 So.2d 398 (Fla. 1st Dist.Ct.App.1978) seems to apply a legal standard akin to the minority rule. In *West Building Materials*, a young boy, Keith Arrant, set off a smoke bomb in appellant's building, causing it to catch fire. The court held that under Allstate's intentional injury exclusion, Arrant's family was not covered for his act because "ignition of the bomb was the natural, probable, and intended result of Keith's act." Appellant had argued that young Arrant intended to cause only smoke, not fire. Although *West Building Materials* uses language that echoes the minority rule with regard to intentional injury exclusions, on its facts the case fits into the results of other Florida cases, such as *Hartford Fire Ins. Co. v. Spreen*, 343 So.2d 649 (Fla. 3d Dist.Ct.App.1977). The court in *West* could have found that because Arrant intended to cause smoke damage, it did not matter that he actually also caused fire damage, just as in *Spreen* it did not matter that the insured intended to inflict a far lesser injury on Spreen than Spreen actually suffered. *West* is a one paragraph opinion and we believe that to the extent it adopts a different legal standard than the other Florida cases, it is an aberration.

A second view of intent often urged upon the courts by litigants goes to the other extreme and defines "intentional" by looking at whether the insured inflicted the precise injury and degree of injury that he intended to inflict. *See Butler v. Behaeghe*, 37 Colo.App. 282, 548 P.2d 934, 938 (1976) (such a standard "logically untenable and unsupported by recent authority"). Under the view rejected in *Butler*, Steinemer would prevail, even if he intended to hurt Pattison by "stinging" him with the BB, by showing that he did not intend to inflict a severe eye injury on his friend.

3. The district court apparently adopted the same position. *See* footnote one, *supra*.

pumped the BB gun only once the shot would not "hurt" a person, Steinemer followed his friend's advice and only pumped the gun once before shooting at Pattison again. Because a jury could infer that Steinemer had reason to believe that a one pump shot would be harmless, we believe such a jury could find that Steinemer had no intention of "hurting" his friend with the second shot. On the other hand, had Steinemer pumped the BB gun three times after he saw the effect of the first shot, we might be faced with the type of situation appropriate for summary judgment, that Allstate poses—that in which a person intending minor harm, *i.e.,* raising another welt on his friend's chest, accidentally inflicts a much greater injury, *i.e.,* putting his friend's eye out. We hold, however, that the evidence creates a genuine issue of fact regarding whether Steinemer *intended* even minor harm when he fired the BB gun at Pattison the *second* time.

For the reasons stated above, we REVERSE the district court's entry of summary judgment for Allstate, and REMAND to the district court for trial.