**ALLSTATE INSURANCE COMPANY, Petitioner,**

v.

**Glenn Clark TROELSTRUP, Respondent.**

**No. 88SC489.**

Supreme Court of Colorado, En Banc.

April 9, 1990.

Zupkus & Ayd, P.C., Patricia M. Ayd, Denver, Sonnenschein, Carlin, Nath & Rosenthal, Paul E.B. Glad, San Francisco, Cal., and Alan M. Posner, Chicago, Ill., for petitioner.

Steven L. Zimmerman, P.C., J. Gregory Morrell, Denver, for respondent.

Richard W. Laugesen, Denver, for amicus curiae State Farm Fire & Cas. Co.

Justice ROVIRA delivered the Opinion of the Court.

The question before us is whether a person who has been convicted of sexual assault on a child and is subsequently sued by the child can look to his homeowner's insurance policy for coverage, when the policy excludes coverage for "bodily injury ... intentionally caused by an insured person."

The petitioner, Allstate Insurance Company (Allstate), seeks a declaration that it has no duty to defend or indemnify the respondent, Glenn Troelstrup.[1] Troelstrup filed a counterclaim alleging that Allstate had improperly handled the child's claim against him.[2] The trial court granted Allstate's motions for summary judgment on both the coverage issue and on Troelstrup's counterclaim. The court of appeals reversed, holding that an unresolved question of fact existed as to whether Troelstrup intended to harm the victim in the underlying action. *Allstate Ins. Co. v. Troelstrup,* 768 P.2d 731 (Colo.App.1988). We reverse.

## I

In the related criminal proceeding, Troelstrup entered a plea of nolo conten-

1. In *Troelstrup v. District Court,* 712 P.2d 1010 (Colo.1986), we held that the trial court did not abuse its discretion when it held that this declaratory judgment action could proceed to judgment while the underlying case was pending.

2. Troelstrup's counterclaim alleges that Allstate was negligent in its investigation and adjustment of the child's claim; committed a bad faith breach of its insurance contract; and engaged in reckless and outrageous conduct.

dere to the charge of sexual assault upon a 12–year–old boy, W.M.L.,[3] and received a three-year prison term. In determining the appropriate sentence, the trial court noted that Troelstrup had gone to extraordinary lengths to obtain the confidence of the victim and that these actions were undertaken to "satisfy his own sexual gratification."

Subsequently, a civil suit was brought on behalf of W.M.L. alleging, in part, that Troelstrup engaged in various homosexual acts with W.M.L.; committed the crime of sexual assault on a child; and photographed and developed nude and erotic photographs of W.M.L. The complaint also alleged that W.M.L. experienced pain, shock, and mental suffering as a result of Troelstrup's acts. Monetary relief was sought based upon theories of negligence and extreme and outrageous conduct.

Troelstrup tendered defense of the civil action to Allstate, under his homeowner's insurance policy in effect at the time of the molestations. Allstate accepted the defense under a reservation of rights and retained the services of independent counsel to defend Troelstrup.[4] Subsequently, Allstate filed a declaratory judgment action, asserting that it was not required to indemnify or defend Troelstrup in W.M.L.'s civil action because the homeowner's policy excluded coverage for "bodily injury or property damage intentionally caused by an insured person."[5] After Troelstrup filed his answer and counterclaim, Allstate moved for summary judgment.

In support of its summary judgment motion, Allstate submitted the deposition testimony of Troelstrup, in which he admitted to taking nude photographs of W.M.L.; massaging W.M.L.'s body, including his groin, with an electric vibrator; sleeping nude with W.M.L.; touching his male organs to W.M.L.'s body while they slept; and proposing oral sex to W.M.L. Further, Troelstrup does not contend that he did not intend to commit these acts.[6]

Troelstrup then filed a cross-motion for summary judgment, claiming that the intentional injury exclusion was inapplicable because he did not intend to harm W.M.L. In support of this contention, he submitted the deposition testimony of various individuals who had been involved in the treatment of the victim, and the police official who conducted the investigation in the related criminal proceeding. He also submitted the affidavit of Dr. John D. Glismann, a psychiatrist, who stated that "[c]onsciously and overtly [Troelstrup] saw himself as a paternal surrogate and sincerely felt that he was encouraging and supporting the growth and development of male children.... In any event, conscious awareness or conscious intent to produce bodily or emotional injury is not present." Glismann also stated that Troelstrup "consciously and overtly views the use and abuse of [children] as a tragedy and a disgrace."

The trial court granted Allstate's summary judgment motion, holding that Allstate had no duty to indemnify or defend Troelstrup. Subsequently, Allstate filed a second motion for summary judgment regarding Troelstrup's counterclaim which was also granted by the trial court. The court of appeals reversed, holding that "the decision whether Troelstrup acted with intent to harm, so as to invoke the policy exclusion, in light of his proffered evi-

---

3. § 18–3–405, 8B C.R.S. (1986).

4. Troelstrup retained different counsel to represent him in the declaratory judgment proceeding.

5. The insurance policy defines "bodily injury" as meaning "bodily injury, sickness or disease, including resulting death, care and loss of service." In its appeal, Allstate does not contend that W.M.L.'s alleged injuries are outside the policy definition of "bodily injury." The conclusion is consistent with *Bloodworth v. Carroll,* 455 So.2d 1197 (La.App.1984), in which the court held that this definition of bodily injury includes mental anguish, fright, distress, and humiliation. A similar definition of bodily injury was held to encompass a claim of pain, suffering, and mental anguish in *Loewenthal v. Security Insurance Co. of Hartford,* 50 Md.App. 112, 436 A.2d 493 (1981).

6. Troelstrup's deposition testimony, in which he admitted to engaging in the proscribed conduct, makes it unnecessary to consider the implications of his nolo contendere plea in the criminal proceeding.

dence, is one for the trier of fact, not one to be decided as a matter of law by the trial court on a summary judgment motion." *Allstate Ins. Co. v. Troelstrup*, 768 P.2d 731, 732 (Colo.App.1988). The court of appeals also held that, because of its resolution of the intent issue, dismissal of Troelstrup's counterclaim was premature.

## II

The granting of summary judgment is appropriate only in those instances in which there is no dispute as to material factual issues. *See, e.g., Huydts v. Dixon*, 199 Colo. 260, 606 P.2d 1303 (1980). Troelstrup argues that the intentional injury exclusion is inapplicable, because he did not subjectively intend to harm the victim. He admits that in some child molestation cases it would be appropriate to infer an intent to harm the victim as a matter of law. He argues, however, that the facts of this case are not "extreme" enough to warrant such a conclusion.[7]

Allstate, however, argues that an intent to cause injury should be inferred as a matter of law from the nature of the act of sexual misconduct with a child. It points out that Troelstrup has admitted to various acts of child molestation and does not contend that he did not intend to commit these acts. Allstate concludes, therefore, that evidence of Troelstrup's subjective intent to harm the victim is irrelevant.

Generally, an intent to harm is a prerequisite to the application of an intentional injury exclusionary provision. For example, in *Butler v. Behaeghe*, 37 Colo. App. 282, 548 P.2d 934 (1976), the court

held that coverage was precluded by an intentional injury exclusion contained in the defendant's homeowner's insurance policy because the evidence presented at trial showed that the defendant intended to harm the plaintiff. *Butler* involved a dispute between two neighbors which culminated with the defendant's striking the plaintiff in the head with a steel pipe, causing serious injury.

Similarly, in *Allstate Insurance Co. v. Steinemer*, 723 F.2d 873 (11th Cir.1984), the court applied an intentional injury exclusion to a situation in which the defendant injured a friend by shooting him with a BB gun, holding that summary judgment was not appropriate because there was a genuine issue of material fact regarding the defendant's intent to harm the victim. The *Steinemer* court noted that:

> Under the majority rule ... an "intentional injury" exclusion will not apply if the insured intentionally does an act, but has no intent to commit harm, even if the act involves the foreseeable consequences of great harm or even amounts to gross or culpable negligence.

*Id.* at 875.

A substantial majority of courts which have considered this issue, however, have declined to apply this "general rule"[8] to child molestation cases.[9] Some have adopted an "objective test" to evaluate the insured's conduct, while others have held that an intent to cause injury can be inferred as a matter of law in cases involving child molestation.

---

7. Troelstrup, however, does not contend that the victim's inclusion of a negligence claim in the underlying action is relevant to the determination of whether the intentional injury exclusion is applicable. This result is consistent with the conclusions reached by other courts which have considered this issue. *See, e.g., Linebaugh v. Berdish*, 144 Mich.App. 750, 757, 376 N.W.2d 400, 406 (1985) (denying coverage for a "negligent" molestation claim, stating "we agree with the trial court's finding that the complaint is a transparent attempt to trigger insurance coverage by characterizing allegations of tortious conduct [child molestation] under the guise of 'negligent' activity.").

8. As noted in *Young v. American Mini Theatres*, 427 U.S. 50, 65, 96 S.Ct. 2440, 2450, 49 L.Ed.2d 310 (1976), "broad statements of principle, no matter how correct in the context in which they are made, are sometimes qualified by contrary decisions before the absolute limit of the stated principle is reached."

9. Some jurisdictions, however, have considered the insured's subjective intent. *See MacKinnon v. Hanover Ins. Co.*, 124 N.H. 456, 471 A.2d 1166 (1984); *but see Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986). *See also State Auto Mut. Ins. Co. v. McIntyre*, 652 F.Supp. 1177 (N.D.Ala.1987).

The "objective test" considers "what a plain ordinary person would expect and intend to result [from the offender's sexual misconduct]." *CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 94, 666 S.W.2d 689, 691 (1984). *See also Mutual Serv. Casualty Ins. Co. v. McGehee,* 219 Mont. 304, 711 P.2d 826 (1985). This approach, however, has been criticized as being overbroad, rendering "meaningless the plain [policy] language providing for coverage for certain intentional acts." *Rodriguez v. Williams,* 107 Wash.2d 381, 385, 729 P.2d 627, 630 (1986).

Most jurisdictions have, instead, inferred an intent to injure as a matter of law in situations in which the insured has engaged in sexual misconduct with a minor. *See, e.g., Fire Ins. Exch. v. Abbott,* 204 Cal.App.3d 1012, 251 Cal.Rptr. 620 (1988); *Altena v. United Fire & Casualty Co.,* 422 N.W.2d 485 (Iowa 1988); *Lehmann v. Metzger,* 355 N.W.2d 425 (Minn.1984); *Rodriguez v. Williams,* 107 Wash.2d 381, 729 P.2d 627 (1986). In effect, these courts have taken judicial notice that some harm inevitably results from sexual assaults on children.

Both of these approaches recognize that child molestation is inherently harmful, making consideration of the insured's subjective intent irrelevant. For example, in *Allstate Insurance Co. v. Kim W.,* 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984), the court stated that:

> [I]mplicit in the determination that children must be protected from such acts [of molestation] is a determination that at least some harm is inherent in and inevitably results from those acts.... "The harm may be manifested in many different mental, emotional and physical ways, leaving a child with possible lasting and debilitating fears."

*Id.* at 334, 206 Cal.Rptr. at 613 (quoting *People v. Austin,* 111 Cal.App.3d 110, 114–15, 168 Cal.Rptr. 401, 407 (1980)). *See also Allstate Ins. Co. v. Thomas,* 684 F.Supp. 1056 (W.D.Okla.1988); *Linebaugh v. Berdish,* 144 Mich.App. 750, 376 N.W.2d 400 (1985); *Vermont Mut. Ins. Co. v. Malcolm,* 128 N.H. 521, 524, 517 A.2d 800, 802–03 (1986) ("the assaults were inherently injuri-ous in the most obvious sense that they could not be performed upon a boy without appalling effects on his mind as well as forbidden contacts with his body.").

The gravity of this type of activity has also been explicitly recognized by the Colorado legislature, which declared that "the sexual exploitation of children constitutes a wrongful invasion of the child's right of privacy and results in social, developmental, and emotional injury to the child...." § 18–6–403, 8B C.R.S. (1986). Similarly, in *People v. Garciadealba,* 736 P.2d 1240, 1243 (Colo.App.1986), the court noted that child molestation "is indeed a heinous crime that causes devastating results whenever it is committed, particularly when the perpetrator is in a position of trust."

■■ It is implicit in the logic of our criminal statutes that harm inheres in and flows from the proscribed behavior. The majority analysis, regarding the inherently harmful nature of child molestation, is persuasive and accordingly we hold that, in cases involving such molestation, the subjective intent of the insured is not relevant to the determination of whether coverage is precluded pursuant to an intentional injury exclusion. We conclude that an intent to injure may be inferred as a matter of law where child molestation is involved. This approach is more consistent with general principles of contractual interpretation than the "objective approach," because it does not "completely reject the [insured's] subjective intent; rather [it] overrule[s] the insured's actual intent in limited circumstances." *Rodriguez v. Williams,* 107 Wash.2d 381, 385, 729 P.2d 627, 630 (1986). Accordingly, expert testimony regarding Troelstrup's subjective intent does not create a disputed issue of material fact. *See, e.g., CNA Ins. Co. v. McGinnis,* 282 Ark. 90, 666 S.W.2d 689 (1984); *Fire Ins. Exch. v. Abbott,* 204 Cal.App.3d 1012, 251 Cal. Rptr. 620 (1988); *Rodriguez v. Williams,* 107 Wash.2d 381, 729 P.2d 627 (1986).

Troelstrup also contends that an intent to harm should not be inferred as a matter of law in this case because his actions are not "extreme" enough to warrant such a result. We agree with the analysis of the

420

Supreme Court of West Virginia, which held that, given the inherently harmful nature of child molestation, "the application of the majority rule ... is not restricted to those cases involving 'violence,' or penetration or a lengthy period of time during which the sexual contacts have occurred." *Horace Mann Ins. Co. v. Lebber*, 376 S.E.2d 581, 585–86 (W.Va.1988).

### III.

Finally, Troelstrup contends that Allstate should be estopped from denying coverage because it "directed its chosen counsel to be less than zealous" in their representation.[10] Specifically, Troelstrup contends that Allstate attempted to minimize the cost of his defense, resulting in inadequate discovery.

This estoppel claim is not within the scope of our grant of certiorari. Troelstrup, however, addressed this issue in his answer brief which was, in turn, considered by Allstate in its reply brief. This issue was also fully briefed in the court of appeals, which held that resolution of the claim was premature in light of its resolution of the intent issue. Because of our resolution of the intent issue and in the interest of judicial economy, we will now consider Troelstrup's claim.

■ An insurance carrier enters into a quasi-fiduciary relationship with its insured. *See Farmers Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984). Accordingly, the insurer must act in good faith and exercise reasonable care in fulfilling its duty to represent the insured.

■ Here, Allstate accepted Troelstrup's defense of W.M.L.'s suit under a reservation of rights and proceeded to file this declaratory judgment action.[11] These actions represented an unequivocal assertion of non-coverage by Allstate. *See* 7C Appleman, *Insurance Law and Practice* § 4686 (1979). In *Troelstrup v. District Court*, 712 P.2d 1010 (Colo.1986), we held that the declaratory judgment action could be considered while the underlying action was pending. Under these circumstances, Allstate was required only to "take the necessary steps to prevent the main case from going into default or to prevent the insured from being otherwise prejudiced." 7C Appleman, *Insurance Law and Practice* § 4694 at 53 (1989 Supp.).

■ It is undisputed that a timely answer to W.M.L.'s complaint was filed. Further, at the time the trial court granted Allstate's motions for summary judgment, the trial in the underlying action was not scheduled to begin for over a year. Although discovery was incomplete at that time, Troelstrup provides no support for his contention that expedited discovery was necessary. He also fails to show that he was in any way harmed by counsel's alleged shortcomings.

Accordingly, the judgment of the court of appeals is reversed.

10. The only case cited in support of this proposition is *Parsons v. Continental National American Group*, 113 Ariz. 223, 550 P.2d 94 (1976), in which the court held that the insurance carrier was "estopped from denying coverage under its policy when its defense in that action is based upon confidential information obtained by the carrier's attorney from an insured as a result of representing him in the original tort action." *Id.* at 225, 550 P.2d at 95. There is no indication that there is any similar conflict of interest present here.

11. "An insurer's timely disclaimer of liability bars the application of the rule that the assumption of the defense by the insurer estops it from claiming non-liability under [the] policy." 7C Appleman, *Insurance Law and Practice* § 4694 at 344 (1979).