**HORACE MANN INSURANCE COMPANY, Plaintiff,**

v.

**Cecil FORE, et al., Defendants.**

Civ. A. No. 91–C–985–N.

United States District Court, M.D. Alabama, E.D.

Jan. 29, 1992.

Clyde C. Owen, Jr., Ball, Ball, Matthews & Novak, Montgomery, Ala., for plaintiff.

Jere L. Beasley, Mark J. Williams, Beasley, Wilson, Allen, Mendelsohn, Jemison & James, Montgomery, Ala., for defendants "Mary Doe", "Sue Doe" & "Jane Doe".

Cecil Fore, pro se.

## MEMORANDUM OPINION

JOHN L. CARROLL, United States Magistrate Judge.

### I. FACTS

The plaintiff, Horace Mann Insurance Company, has moved this court for a declaratory judgment as to the scope of its duty to indemnify or defend its insured, Cecil Fore, and for summary judgment. The motion for summary judgment was filed November 6, 1991. On November 15, 1991, Judge Hobbs ordered that a response be made on or before December 4, 1991, and informed the parties that as of December 4, 1991 the motion would be deemed submitted by the court.[1] The defendants have filed no response.

The defendants in this case are Mr. Fore, a teacher, and the three minor victims of his unwanted and illegal sexual attentions, John, Harry and James Doe, as represented by their next friends Mary, Sue and Jane Doe, respectively, hereafter the "Doe party." The facts giving rise to this dispute are the existence of an insurance policy, issued by the plaintiff to Mr. Fore as a member of the state affiliate of the National Education Association, which excludes coverage for activities not related to the insured's educational employment, for civil suits arising from criminal acts, and for the consequences of the insured's intended actions. During the course of the 1989–90 or 1990–91 school year, Mr. Fore committed the acts against the children, each of whom was enrolled in Montgomery County's special education program and each of whom was in junior high school.

On January 16, 1991, Mr. Fore was convicted in consolidated proceedings of multiple counts of sodomy in the second degree in violation of Ala.Code § 13A–6–67 and of one count of sexual abuse in the second degree in violation of Ala.Code § 13A–6–64. The Doe party filed their civil suit January 25, 1991.[2] Under a reservation of rights, the plaintiff insurer provided counsel to defend Mr. Fore in the civil suit.

The insurer seeks a declaration that it owes no duty to defend or indemnify Mr. Fore in the civil suit because of exceptions in coverage accruing from the sexual abuse of John, Henry, and James Doe, his students. The court examines each of the three relevant exceptions to coverage in turn.

### II. DISCUSSION

*The Exclusion of Noneducational Employment Activities*

■ The plaintiff insurer contends that Mr. Fore's sexually abusive acts do not constitute "educational employment activities" within the meaning of the contract of insurance. The policy provides:

The term 'Educational Employment Activities' means the activities of the insured performed:

1. Pursuant to the express or implied terms of his/her employment by an educational unit; [or]

2. At the express request or with the express approval of his/her supervisor; provided that, at the time of such request or approval, the supervisor was performing what would appear to be his/her educational employment activities ...

While it is intuitively obvious that sexual abuse is not an activity concerned with education, there is case law amplifying the point. The court in *Worcester Ins. Co. v. Fells Acres Day Schl., Inc.*, 408 Mass. 393, 413, 558 N.E.2d 958 (1990), noted that sexually abusive acts "were not of the kind [a

1. The order from Judge Hobbs antedated the agreement of all parties to transfer this case to this court pursuant to the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, but predated the order of reference, which was signed by Judge Hobbs December 18, 1991. There has

been no order vacating the order which set the summary judgment motion for submission on December 4, 1991.

2. Three suits were actually filed, but the state court consolidated them April 19, 1991.

school employee] was employed to perform" and were not "motivated ... by a purpose to serve the employer." Similarly, a California court construing the same policy provision as that at issue here found that, as a matter of law, sexual abuse is not identified with employment as a teacher and that the insurer had no duty to indemnify or defend an elementary school teacher who molested a pupil. Summary judgment was entered for the insurer. *Horace Mann Ins. Co. v. Analisa N.,* 214 Cal.App.3d 850, 263 Cal.Rptr. 61 (1989). The court averred that it could not "fathom a more personal activity less related to the goal of education" than a teacher's sexual abuse of his student. *Analisa N.,* 263 Cal. Rptr. at 64.

The court finds no Alabama authority that disputes this eminently reasonable conclusion.[3] Accordingly, finding the authority from other jurisdictions persuasive on this identical issue, the court finds that no genuine issue of material fact has been presented as to the educational employment activities exclusion and that the plaintiff is entitled to judgment on this issue as a matter of law.

### The Exclusion for Liability Based on Criminal Activity

■ Alabama law is unambiguous on the point that nothing requires an insurer to indemnify a third party for the insured's criminal acts. *See Hooper v. Allstate Ins. Co.,* 571 So.2d 1001, 1003 (Ala.1990). Nor does the insurer's exclusion of coverage for criminal acts violate public policy, because "insurance companies have the right to limit their liability and to write policies with narrow coverage." *Hooper,* 571 So.2d at 1003.

Part VII of the policy specifically denies coverage for "civil suits arising from criminal acts." The policy states, "[T]his contract does not apply to any civil suit arising out of an act ... which has been held by a court to constitute a crime."

■ Mr. Fore was convicted in the Circuit Court of Montgomery, Alabama, of multiple counts of sodomy in the second degree, a crime under Ala.Code § 13A–6–67, and one count of sexual abuse in the second degree, a crime under § 13A–6–64. These crimes are the gravamen of the civil suit. But for the acts of sexual abuse which constitute criminal offenses, there would be no civil suit. Accordingly, coverage is expressly excluded since the criminal activity is beyond dispute. The plaintiff is also entitled to judgment on this issue as a matter of law.

### The Intended Injury Exclusion

■ The policy provides, "[T]his contract does not apply to occurrences involving damages which are the intended consequence of action taken by [you] or at your direction." The court finds this language to be substantially equivalent to the standard language "Coverage ... [does] not apply to bodily injury or property damage which is expected or intended by the insured," which is the subject of interpretation in the cases cited and discussed below. Accordingly, the court believes that any effort to distinguish the cases cited below from the instant case based on semantics would be hypertechnical and dissembling. It finds the cases discussed below instructive.

■ Because the insurer has prayed for summary judgment, it is necessary to discuss in extensive detail this issue so gingerly avoided by the insurer in its brief supporting its motion for summary judgment. The court believes that the avoided issue is at the heart of this case, and notes that summary judgment would be inappropriate in this case if the reasoning and holding of our sister court in the Northern District were an accurate understanding of Alabama law and the public policy of this state, provided that this court is correct in viewing this case as intimately concerned with an intentional act of sexual abuse by an insured whose policy excludes coverage for such acts.[4] However, no amount of

---

**3.** *See infra* n. 5.

**4.** Summary judgment would be inappropriate because a genuine issue of material fact exists if the court chose to apply the subjective-intent

qualification could persuade this court that the decision in *State Auto Mut. Ins. Co. v. McIntyre*, 652 F.Supp. 1177 (N.D.Ala.1987), is correct. Some discussion of the *McIntyre* opinion must preface this court's discussion of what it has determined would accurately reflect Alabama law.[5]

In *McIntyre*, a grandfather sexually abused his nine-year-old granddaughter on two occasions. Presumably because his penis did not penetrate the little girl's vagina, the court repeatedly throughout its opinion characterized the abuse as "nonviolent."[6]

standard to the policy's "intended injury" exclusion, and because if the subjective standard states the law of Alabama for sexual abuse cases, the insurer would not be entitled to summary judgment as a matter of law. To hold otherwise would produce the ironic result of allowing insurers to exclude coverage in a sexual-abuse case without ever squarely facing the issue of intent even as the exclusion for intentional acts remains in their policies. They would continue, as here, to plead around their case, even though the insurer's senior claims coordinator specifically informed Mr. Fore in an April 19, 1991 letter that the first basis on which the insurer could seek to exclude coverage was the "intended consequences" language. Plaintiff's Exh. 4 in Support of its Motion for Summary Judgment. This letter was tendered together with the claims coordinator's affidavit and various incarnations of the complete policy, each of which is supported by this affidavit. Thus, the exhibit is a proper subject of this court's consideration and is not inadmissible hearsay. *See* Wright & Miller, *Federal Practice and Procedure* § 2738. Moreover, the court notes that once the moving party has submitted admissible evidence justifying summary judgment that is uncontradicted, the opposing party has a duty to show the existence of a disputed issue of material fact. *Id. See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). This has not been done here. Insofar as the declaratory judgment action is concerned, the court believes it has properly relied on admissible evidence before it and that the intended injury issue meets the standard of a "substantial legal controversy, between parties having adverse interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

This is why the court must discuss this issue at such great length even though the insurer did not unambiguously claim in its brief that coverage was excluded because the acts were intentional. The insurer's abundance of caution and canniness in pleading is, in this court's view, because of its awareness of a decision emanating from the Northern District of Alabama unfavorable to its position. In the instant case involving insurance coverage for insureds who sexually abuse children, the insurer's trepidation in pleading cannot relieve this court of an obligation to analyze the subjective intent issue where summary judgment is sought and where the court is convinced that the intentional inju-

ry exclusion is crucial to the insurer's action and integral to the policy.

The court believes that the insurer has deliberately avoided the intended-injury issue and that the interests of justice could be frustrated if the court participates in that avoidance. Whether this court's sister to the north has correctly essayed Alabama law is an essential component of this case and the insurer is entitled to an examination of that issue despite the timidity of its pleadings, which concentrated on the "sure winners" even though those are subsidiary issues in this case. Therefore, the court construes the pleadings so as to do substantial justice pursuant to Fed.R.Civ.P. 8(f) and proceeds to analysis of the intended injury policy exclusion and the case law pertinent to that policy language. The court notes that even if it were somehow mistaken in doing so, such a mistake would not alter the result in this case because the nonliability of the insurer is so clear based on the exclusions actually pled. The court does not believe it is mistaken, however, and would, in fact, think itself derelict in its duty were it to accept the insurer's argument at a bare facial level when it knows full well that the real issue is subterranean in these filings before it. The court believes that it is absolutely appropriate to reach this issue at this time.

5. In a case in which its jurisdiction is premised on diversity of citizenship, the court is bound to apply the forum state's substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Provau v. State Farm Mut. Auto Ins. Co.*, 772 F.2d 817, 820 (11th Cir.1985); *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir.1983). Contract law is substantive law, and the matter at issue here is one of interpretation of a contract of insurance. Here, however, there is no reported Alabama case law construing the clause at issue in a case involving sexual abuse of children. Since there is no controlling decision handed down by Alabama's highest court, the court must make its best prediction as to how the Alabama Supreme Court would decide the case. In so doing, the court may look to the better-reasoned decisions of other courts, and it is not bound by the prediction of another federal district court exercising diversity jurisdiction in the forum state where it believes that that court made an erroneous prediction.

6. Several courts have objected to a description of sexual abuse as "nonviolent." One court has wondered "if any unwanted physical contact can be called nonviolent," considering it dubi-

See, e.g., McIntyre, 652 F.Supp. at 1178, 1183, 1221. Apparently, the court thought that the quantum of violence used had great relevance to construing the policy language, which excluded coverage for "bodily injury or property damage which is expected or intended by the insured." 652 F.Supp. at 1186.[7]

The McIntyre court was convinced that the so-called subjective standard governed all manner of cases in which an exclusion for intentional acts existed. The McIntyre opinion indicates that the court believed this to be the pure edict of the Alabama Supreme Court in Alabama Farm Mut. Cas. Ins. v. Dyer, 454 So.2d 921 (Ala.1984).

This court believes the McIntyre court's reliance on Dyer to be misplaced. Dyer did not involve sexual abuse, but the discharge of a gun. This court finds that Dyer can easily be distinguished from the instant case and that the Dyer result has a certain internal logic that the McIntyre result lacks. It might be plausibly argued, for example, that as a matter of metaphysics, a person such as the shooter in Dyer has a certain detachment from and ignorance of the mechanics of shooting even as he squeezes the trigger. Surely he knows that the gun will fire; surely he expects that when the gun fires the bullet will not fall ineffectually from the chamber onto the floor. But he cannot fully know until he has fired how the gun will react and what the bullet will do to its target. Obviously, in the state of Alabama, this realization of certain psychological or metaphysical workings aids an insured in his quest to force the insurer to pay for his deliberate act; Dyer governs just the precise situation in which an insured acts more out of detached stupidity or blunted sensitivity to others than out of evident malice.[8]

ous that "nonviolent" sexual assaults invariably produce less harm than those in which substantial physical force is used, and noting the irony in the fact that "plaintiffs seek hefty sums of money in damages for the harm to the minor plaintiffs allegedly suffered from [the defendant's] 'nonviolent' sexual attacks." Whitt v. DeLeu, 707 F.Supp. 1011, 1015 n. 5 (W.D.Wis. 1989). Another court has pointed out that the "violence" of an abusive episode is legally irrelevant in the context of the insurance-coverage question: "[T]he [rejection of] an alleged duty to defend is not restricted to those cases involving 'violence,' or penetration or a lengthy period of time during which the sexual contacts have occurred." Horace Mann Ins. Co. v. Leeber, 180 W.Va. 375, 376 S.E.2d 581, 586 (1988) (citing Allstate Ins. Co. v. Thomas, 684 F.Supp. 1056, 1059–60 (W.D.Okla.1988)).

7. Judge Haltom also noted that, despite evidence that the defendant had previously molested a niece and had molested his own daughter when she was a minor, the grandfather had no convictions for these molestations and "had been a good, reputable citizen and a hardworking man prior to his 1985 criminal conviction for sexual abuse." Id. at 1183. These episodes were also characterized by the judge as "nonviolent" "indulgences" although the evidence suggested that the defendant had attempted rape on his daughter. Id.

8. It could be that an Eleventh Circuit case, Allstate Ins. Co. v. Steinemer, 723 F.2d 873 (1984), also greatly influenced the McIntyre court. It could be that the court believed that the Eleventh Circuit had itself ordained the subjective-intent standard and rejected the inference test. Any such reading, however, would be misguided for the reasons explained in the text accompanying this footnote. In Steinemer, two young men were "roughhousing," and one was injured with a BB gun. The gun was deliberately fired, but the act was accompanied more by a prankster's mischief than by any actual malice. Apparently, the court implicitly adopted the argument that the deliberate shooting, committed because the shooter wanted his friend to "feel" this shot since he had not "felt" its predecessor, was more like an accident than an intentional act. The court wrote:

[A]n intention for one to 'feel' something is a far cry from an intention to harm or hurt someone, even slightly. One intends for another to 'feel' a handshake or a hug or a tap on the shoulder, without intending any harm. Similarly, a baseball pitcher may intend for his catcher to 'feel' a good hard pitch, and he may even expect it to sting, but he does not intend harm. If harm should result from an overly effusive handshake or a particularly hard pitch, we are not prepared to hold that the harm falls within an insurance exclusion for intentional conduct.

Steinemer, 723 F.2d at 876.

Clearly, the sexual abuse of a minor will have a broader and more devastating effect than getting one's hand pinched while greeting someone. The inaptness of the analogy proves the point this court is making in the text accompanying this footnote and underscores the fact that the Eleventh Circuit could not possibly have meant for its Steinemer holding to be extended to cases of child sexual abuse.

Finally, Steinemer essays Florida law which is without potency in this Alabama court, and Florida law before the Florida courts stopped

But there is no similar detachment caused by a lack of experiential knowledge of the consequences when one's body, rather than a gun, lead pipe, or bazooka, is the offending instrumentality. With sexual abuse, as presented in the *McIntyre* facts and the facts of the instant case, there is no intervening instrumentality that could malfunction or behave in a way that the operator could not predict. The body of the perpetrator is the instrumentality, and the thought or impulse he has to do harm is the governor of the instrumentality. The perpetrator alone controls his movements, and he knows the consequences of them. By virtue of a thousand ordinary, daily movements, he learns kinetics and sensations—his body is not a stranger with properties that surprise him. The *Dyer* case is thus distinguishable in an important physical respect from cases like *McIntyre* and the instant case.

At least one court has grasped this analytical distinction. *Worcester Ins. Co. v. Fells Acres Day Schl., Inc.,* 408 Mass. 393, 558 N.E.2d 958 (1990), was a case in which several of the preschool program's employees, including the proprietor, were convicted of rape and indecent assault and battery against several of the children. The homeowner's insurance policy excluded coverage for intentional injuries. The court noted that "forceful sexual molestation and rape are unlike" hurling a piece of blacktop at a passing motorist and causing injury because in the latter instance it is "possible that the insured's intentional acts were accidental." *Fells Acres Day Schl.,* 408 Mass. at 403, 558 N.E.2d 958 (discussing *Quincy Mut. Fire Ins. Co. v. Abernathy,* 393 Mass. 81, 84, 469 N.E.2d 797 (1984)).

The *McIntyre* court was well aware that the Alabama Supreme Court had not ruled on the applicability of the subjective-intent standard to cases involving sexual abuse. However, the court felt comfortable in making a prediction of how the Alabama court would rule: "[T]he judge who is here sitting is thoroughly persuaded by his 31 years of trial and appellate practice in the Alabama courts as a private practitioner

applying the subjective-intent standard to sexual

and by his 6 (plus) years of federal judicial experience sitting in the Northern District of Alabama that he can reasonably predict the opinion and holding of Alabama's highest court ..." 652 F.Supp. at 1195.

This court cannot agree with the *McIntyre* court's prediction. Fully four years later, the Alabama Supreme Court still has not ruled on the issue, and this court is in the position of making a prediction just as was the judge in *McIntyre.* However, this court in making its own prediction has the benefit of judicial criticism of the *McIntyre* court's prediction. The decision has been decried by those courts that have discussed it.

The opinion in *Allstate Ins. Co. v. Roelfs,* 698 F.Supp. 815 (D. Alaska 1987), is particularly thoughtful. The court identified three approaches the courts have taken to the question of whether the insured intended to cause injury and thus whether the intentional injury exclusion applies. The first of these is the *McIntyre* approach, which seeks the insured's actual, subjective intent to cause injury. The second is the objective test, which inquires whether a reasonable person would have foreseen that his action would cause harm. The third approach, and that taken by the vast majority of courts that have considered the issue, is the inference test, by which intent to harm is inferred from the nature of the act of sexual molestation or abuse regardless of the standard that governs other types of cases. *See Roelfs,* 698 F.Supp. at 820.

It is this sensible third approach that *McIntyre* rejected, preferring the subjective-intent test. As the *Roelfs* court points out, however, the *Dyer* case on which the *McIntyre* court ostensibly relied purported to follow the reasoning of *Continental Western Ins. Co. v. Toal,* 309 Minn. 169, 244 N.W.2d 121 (1976). However, the *McIntyre* court ignored one prong of *Toal:* in some cases, intent to injure may be inferred from the act committed, as a matter of law. *See Roelfs,* 698 F.Supp. at 820 n. 5. The *Roelfs* court believed that this oversight led the *McIntyre* court to an

abuse cases, at that.

error of reasoning. The *McIntyre* analysis, that court wrote, "confuses the objective test with the inference test." *Id.* This court agrees.

Two other courts have termed the minority rule embodied by *McIntyre* "logically untenable." *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581, 591 (1988); *Western Nat'l Ins. Co. v. Hecker*, 43 Wash.App. 816, 719 P.2d 954, 960 (1986). As one commentator has expressed it, "A completely subjective test would virtually make it impossible to preclude coverage for intentional [injuries] absent admissions by insureds of a specific intent to harm or injure. Human nature augurs against any viable expectation of such admissions." James L. Rigelhaupt, Annotation, Construction and Application of Liability Insurance Policy Expressly Excluding Injuries Intended or Expected by Insured, 31 A.L.R.4th 957, 962 (1991).

In 1988, a California court critical of the subjective-intent approach made the following observation:

Insureds and their victims prefer us to follow a minority of decisions treating insurance coverage for sexual misconduct as dependent on evidence of the insured's actual, subjective intent to injure (*citing McIntyre; MacKinnon v. Hanover Ins. Co.*, 471 A.2d 1166, 1167–69 (N.H.1984); *Zordan v. Page*, 500 So.2d 608, 610–11 (Fla.1987)). We note that the latter two decisions are questionable authority in their own jurisdictions ... The New Hampshire Supreme Court has apparently reversed itself without citing its earlier *MacKinnon* opinion. Two different appellate courts in Florida have adopted the dissent of *Zordan v. Page* ... and certified this conflict for review by the Florida Supreme Court. *Fire Ins. Exc. v. Abbott*, 204 Cal.App.3d 1012, 251 Cal.Rptr. 620 (Cal.App.1988).

The prescience of those remarks of the *Abbott* court is apparent when one reads the comments of a federal district court in Wisconsin just one year later:

The courts in five cases have taken what has become the minority approach, applying a subjective test and holding that the 'intentional injury' exclusion does not preclude coverage unless the claimant shows the actor acted with actual intent to harm.... [T]his holding in two of the cases was subsequently rejected by the ... courts in the same jurisdiction (Florida [*Zordan*] and New Hampshire [*MacKinnon*]); in two other cases the holdings by, respectively, a state court of appeals and a federal circuit court of appeals may be contrary to earlier rulings by the state supreme courts in those jurisdictions (California [*State Farm Fire & Cas. Co. v. Estate of Jenner*, 856 F.2d 1359 (9th Cir.1988)] and Colorado [*Allstate Ins. Co. v. Troelstrup*, 768 P.2d 731 (Colo.App.1988)]); and in one case the federal district court applied state law from cases not involving sexual offenses, where the state courts had not yet addressed the issue of intent to harm in liability insurance cases involving sexual assaults of minors (Alabama [*McIntyre*]). *Whitt v. DeLeu*, 707 F.Supp. 1011, 1015 & n. 7 (W.D.Wis.1989).

The decisions referred to which gutted the *Zordan* decision were *McCullough v. Central Florida YMCA*, 523 So.2d 1208 (Fla. Dist.Ct.App.1988), and *Landis v. Allstate Ins. Co.*, 516 So.2d 305 (Fla.Dist.Ct.App. 1987). New Hampshire overruled *MacKinnon* sub silentio with *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986). Moreover, the 1988 *Troelstrup* case was reversed by the Colorado Supreme Court. *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415 (Colo.1990) (en banc). Thus, in reality, the only cases truly enunciating the minority rule that have not been overruled (because the issue has not been entertained by a higher court) are the Ninth Circuit *Jenner* case, which the *Whitt* court noted might be at odds with state law as the California Supreme Court would have construed it, and the *McIntyre* case, which has not attracted one word of approbation from the judiciary. Every other jurisdiction has subsequently corrected the errant court that embraced the subjective-intent test for sexual-abuse cases.

The *Abbott* court, like the *Roelfs* court, expressed reservations about *McIntyre*

particularly, writing, "We are not persuaded by this minority view, even assuming the federal district court opinion has correctly predicted [that] Alabama state courts will not presume an intent to injure from an insured's sexual misconduct with a minor in disregard of the insured's subjective intent." *Abbott*, 204 Cal.App.3d at 1027, 251 Cal.Rptr. at 653. *See also Atlantic Employers Ins. Co. v. Tots & Toddlers Pre–Schl. Day Care Center*, 239 N.J.Super. 276, 284, 571 A.2d 300, 303 (N.J.Super.1990) (rejecting subjective-intent test generally and *McIntyre* specifically).

In short, the court believes that the *McIntyre* opinion stands in disrepute. No court has ever quoted the case with approval or subscribed to the reasoning offered there. Instead, the vast majority of courts that have considered the issue have rejected the *McIntyre* approach.

For example, the *Whitt* case involved a § 1983 action brought by parents for sexual assaults committed against two minors by a school district employee. The defendant had a homeowner's policy, the terms of which excluded "bodily injury or property damage ... which is expected or intended by the insured." 707 F.Supp. at 1013. The insurer moved for summary judgment, arguing that the insured's intent to harm

created a genuine issue of material fact precluding summary disposition. The court rejected that argument, stating:

> [T]he alleged sexual contact is so substantially certain to result in some injury, or so inherently injurious, 'that the act is considered a criminal offense for which public policy precludes a claim of unintended consequences, that is, a claim that no harm was intended to result from the act' (*quoting Horace Mann Ins. Co. v. Leeber* [180 W.Va. 375], 376 S.E.2d 581, 585 (W.Va.1988)). *Whitt*, 707 F.Supp. at 1015.

The *Whitt* court held that, in cases involving the sexual abuse of children, intent to injure would be inferred as a matter of law "regardless of claimed intent," 707 F.Supp. at 1016. Consequently, the exclusion for intentional injury precluded coverage for the abusive acts. The *Whitt* court marshalled an impressive array of authority for its holding, citing cases in states with radically different legal cultures which nonetheless all agreed on this rule. These states included Arkansas, California, Colorado, Florida, Georgia, Iowa, Maryland, Massachusetts, Michigan, Minnesota, New Hampshire, Oklahoma, Washington, and West Virginia.[9] Nevada and Pennsyl-

---

**9.** The cases cited by the *Whitt* court are: *American States Ins. Co. v. Borbor*, 826 F.2d 888 (9th Cir.1987); *State Farm Fire & Cas. Co. v. Huie*, 666 F.Supp. 1402 (N.D.Cal.1987); *CNA Ins. Co. v. McGinniss*, 282 Ark. 90, 666 S.W.2d 689 (1984); *Fire Ins. Exc. v. Abbott*, 204 Cal.App.3d 1012, 251 Cal.Rptr. 620 (1988); *Allstate Ins. Co. v. Kim W.*, 160 Cal.App.3d 326, 206 Cal.Rptr. 609 (1984); *Troelstrup v. District Court*, 712 P.2d 1010 (Colo.1986); *McCullough v. Central Florida YMCA*, 523 So.2d 1208 (Fla.Dist.Ct.App.1987); *Landis v. Allstate Ins. Co.*, 516 So.2d 305 (Fla.Dist.Ct.App.1988); *Roe v. State Farm Fire & Cas.*, 188 Ga.App. 368, 373 S.E.2d 23 (1988); *Altena v. United Fire & Cas. Co.*, 422 N.W.2d 485 (Iowa 1988); *Harpy v. Nationwide Mut. Fire Ins. Co.*, 76 Md.App. 474, 545 A.2d 718 (1988); *Terrio v. McDonough*, 16 Mass.App.Ct. 163, 450 N.E.2d 190 (1983); *Auto–Owners Ins. Co. v. Gardipey*, 173 Mich.App. 711, 434 N.W.2d 220 (1988); *Linebaugh v. Berdish*, 144 Mich.App. 750, 376 N.W.2d 400 (1985); *Horace Mann Ins. Co. v. Independent Schl. Dist. No. 656*, 355 N.W.2d 413 (Minn.1984); *Estate of Lehmann v. Metzger*, 355 N.W.2d 425 (Minn.1984); *Firemen's Fund Ins. Co. v. Hill*, 314 N.W.2d 834 (Minn.1982); *Illinois Farmers Ins. Co. v. Judith G.*, 379 N.W.2d 638

(Minn.Ct.App.1986); *Mutual Serv. Cas. Ins. Co. v. Puhl*, 354 N.W.2d 900 (Minn.Ct.App.1984); *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800 (1986); *Allstate Ins. Co. v. Thomas*, 684 F.Supp. 1056 (W.D.Okla.1988); *Rodriguez v. Williams*, 107 Wash.2d 381, 729 P.2d 627 (1986); *Public Employees Mut. Ins. Co. v. Rash*, 48 Wash.App. 701, 740 P.2d 370 (1987); *Grange Ins. Ass'n v. Authier*, 45 Wash.App. 383, 725 P.2d 642 (1986); *St. Michelle v. Robinson*, 52 Wash.App. 309, 759 P.2d 467 (1988); *Horace Mann Ins. Co. v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988).

Additional cases that the *Whitt* court could have cited are the *Roelfs* case, adding Alaska to the roster of states that adopt the majority rule; *Allstate Ins. Co. v. Gilbert*, 852 F.2d 449, 452 (9th Cir.1988); *K.A.G. v. Stanford*, 148 Wis.2d 158, 434 N.W.2d 790 (1988); and *People v. Garciadealba*, 736 P.2d 1240 (Colo.App.1986).

In addition, three cases decided after *Whitt* are particularly compelling. These are *Allstate Ins. Co. v. Troelstrup*, 789 P.2d 415 (Colo.1990) (en banc) (reversing appellate court's determination that subjective intent of insured presented genuine issue of material fact and entering summary judgment for the insurer based on rule that intent to injure can be presumed as a

vania courts have now held the same way, the federal district court in Nevada being persuaded that the "well-reasoned decisions" found that intent to harm could be inferred from sexual contact with a minor regardless of the insured's subjective intent. *Allstate Ins. Co. v. Foster*, 693 F.Supp. 886 (D.Nev.1988). *See also Foremost Ins. Co. v. Weetman*, 726 F.Supp. 618, 622 (W.D.Pa.1989) ("A person who sexually abuses a minor cannot expect his insurer to cover his misconduct and cannot escape personal liability by claiming that he did not intend to cause any harm. In situations such as this, injury always ensues, and we conclude that one who manipulates children for his own sexual gratification intends any resulting injuries, as a matter of law.").

Two courts have forcefully expressed the reason for implying intent to harm as a matter of law. In *Vermont Mut. Ins. Co. v. Malcolm*, 128 N.H. 521, 517 A.2d 800, 802–03 (1986), the court discussed the injury inflicted by homosexual assault, writing, "[T]he assaults were inherently injurious in the most obvious sense that they could not be performed on a boy without appalling effects on his mind as well as forbidden contacts with his body." Similarly, the court in *People v. Garciadealba*, 736 P.2d 1240, 1243 (Colo.App.1986), denominated sexual molestation of children "a heinous crime that causes devastating results whenever it is committed, particularly when the perpetrator is in a position of trust" (as would be a teacher, especially a teacher of the uniquely vulnerable Doe children, all special-education students). *See also Allstate Ins. Co. v. Kim W.*, 160 Cal. App.3d 326, 334, 206 Cal.Rptr. 609, 613 (1984) (discussing debilitating mental and emotional effects of child sexual abuse).

The *Whitt* court noted that the legal and social values embodied in such a rule may militate against compensation of the actual victims of such assaults. While the court noted that the primary reason for the minority view of *McIntyre* was compensating the victims, it found that the vast majority of courts had correctly "determined that this benefit is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offenses." 707 F.Supp. at 1016 (citations omitted). In addition, the desire to place moral liability with the same precision with which we would place economic liability gives force to the rule:

> [The majority rule] stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. The courts following the majority approach have concluded that sexual misconduct with a minor is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he is expected to know that. Hence, these courts infer the intent to harm as a matter of law in sexual misconduct liability insurance cases involving minors. *Id.*

The inferred-intent rule has been adopted by other states that apply the subjective-intent standard to other categories of insurance-liability cases, without sacrifice of the principle in those other cases. Moreover, this court agrees with the *Roelfs* court that the *Dyer* standard is not at odds with the inferred-intent rule. *Dyer* is simply irrelevant to the almost-universal rule of inferring intent to injure in child sexual-abuse cases. As the *Roelfs* court noted, where intent to injure is inferred as a matter of law from the nature of the act committed, the insured's subjective intent does not matter. Similarly, the objective standard, whereby a court would inquire

---

matter of law in child sexual-abuse cases); *Worcester Ins. Co. v. Fells Acres Day Schl., Inc.*, 408 Mass. 393, 558 N.E.2d 958 (1990) (" 'Child molestation and the injury caused by it are so closely tied as to be virtually inseparable' ") (citations omitted); and *N.N. v. Moraine Mut. Ins. Co.*, 153 Wis.2d 84, 95, 450 N.W.2d 445 (1990)

("[S]exual conduct with a minor is objectively so substantially certain to result in harm to a minor victim that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that") (*quoting Whitt*, 707 F.Supp. at 1016).

whether a reasonable person doing the act would expect injury to result, is irrelevant. In a jurisdiction that follows the inferred-intent rule in cases involving insurance coverage for sexual abuse, it simply would not matter whether the jurisdiction applied the subjective or objective test to the action of shooting a victim with a BB gun or hurling blacktop at him. *See Roelfs*, 698 F.Supp. at 820 n. 5.

It is the opinion of this court that *Dyer* does not dictate that *McIntyre* follow. This court, with the luxury of hindsight, concludes that *McIntyre* offered an incorrect prediction. The court believes that Alabama would follow the inferred-intent rule, joining virtually every court in the nation that has considered the issue. Because the vast weight of authority inveighs against the *McIntyre* result and because the court does not believe that the Alabama Supreme Court is a judicial pariah, it believes that Alabama would make the same sensible determination that other courts have made without abandoning its subjective-intent rule for other types of cases. *See, e.g., Abbott*, 251 Cal.Rptr. 620. This being so, there is no subjective-intent issue in this case that presents a genuine issue of material fact. Where, as here, intent to injure can be inferred as a matter of law, summary judgment is proper if the policy excludes coverage for intended injuries. *See, e.g., Linebaugh v. Berdish*, 144 Mich. App. 750, 376 N.W.2d 400 (1985).

This court also believes that public policy demands the result it reaches in this case. Any other result subsidizes the episodes of child sexual abuse of which its victims complain, at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed. While cases such as these tug at the court's sympathies, the court cannot indulge its sympathies where, as here, they run counter to the mandates of public policy and common sense. To do so would do violence to the law and to common sense, because as a matter of both law and common sense, hurling a piece of blacktop at someone is not the same thing as sexually abusing a child.

This court believes that where the law ranges too far afield from common sense and common experience, it will soon part company with common decency. Allowing insureds to abdicate personal responsibility for actions such as this does not accord with traditional notions of what is decent and honorable in the law. If Alabama law did countenance any result other than the one the overwhelming majority of jurisdictions reach in these cases, it would be an affront to common sense. This court believes that the state courts of Alabama have respect for the dictates of common decency and common sense, and it has applied the law as it believes the Alabama Supreme Court would.

An order will be entered accordingly.

DONE.

## JUDGMENT

In accordance with the Memorandum Opinion entered this date, it is the ORDER, JUDGMENT and DECREE of this court that the motion for summary judgment filed by the plaintiff, Horace Mann Insurance Company, be GRANTED on their complaint for declaratory judgment and that judgment be entered for the plaintiff declaring the rights, duties, obligations and conclusions of law as to these parties of law as follows:

1. That the plaintiff insurer has no duty to defend or indemnify the defendant-insured Cecil Fore for any acts of sexual abuse excluded by that provision of the contract of insurance excluding such coverage for criminal acts;

2. That the plaintiff insurer has no duty to indemnify or defend the defendant-insured Cecil Fore for acts of sexual abuse excluded by that provision of the contract of insurance excluding such coverage for activities that do not qualify as "educational activities"; and

3. That the plaintiff insurer has no duty to indemnify or defend the defendant-insured Cecil Fore for any acts of sexual abuse excluded by that provision of the contract of insurance excluding coverage for "intended injuries."

It is further ORDERED that each party bear its own costs.

DONE.