**Max J. GOLDSMITH, Administrator of the Estate of Chalmer S. Wheeler, M.D., Deceased, Appellant,**

v.

**PHYSICIANS INSURANCE COMPANY OF OHIO, Appellee.**

No. 93–CA–001660–MR.

Court of Appeals of Kentucky.

Oct. 21, 1994.

Discretionary Review Denied By Supreme Court Feb. 8, 1995.

Randall L. Gardner, D. Kevin Ryan, Borowitz & Goldsmith, Louisville, for appellant.

Philip W. Collier, Catherine Murr Young, Stites & Harbinson, Louisville, for appellee.

Before LESTER, C.J., and GUDGEL and WILHOIT, JJ.

LESTER, Chief Judge.

This is an appeal from an order and opinion sustaining a motion for summary judgment dismissing claims for coverage and costs of defense pursuant to a homeowner's insurance policy.

By virtue of three civil suits and criminal charges filed through the Crimes Against Children Unit of the Louisville Police Department, Chalmer S. Wheeler was alleged to have, among other acts, sodomized three young boys of the approximate ages of 13 years. Following Wheeler's death, the suits were filed against appellant, which in turn sought coverage from two insurance carriers, namely, Aetna Casualty and Surety Company and Physicians Insurance Company of Ohio (PICO), the homeowner's carrier. Aetna sought a declaration of rights while PICO did likewise in its cross-claim against the estate. PICO further declined to defend appellant. All claims were settled except the cross-claim aforesaid and upon ruling on a motion for summary judgment the trial court determined that the appellant was not entitled to coverage, indemnification or a defense provided by PICO. In so doing the court, in a concise and well-reasoned order, relied upon *Thompson v. West American Insurance Company*, Ky.App., 839 S.W.2d 579 (1992) and *Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Company*, Ky., 814 S.W.2d 273 (1991).

At all relevant times Wheeler was covered by a homeowner's insurance policy which provided coverage for bodily injuries occurring at certain locations, but excluding therefrom bodily injuries which were expected or intended by the insured. There was also the customary "duty to defend" clause. Further elaboration upon the other policy provisions become unnecessary in light of our view of the central issue of this cause.

In light of the contract provision that coverage is afforded only for bodily injury or property damage that is not "expected or intended," appellant maintains that intent must be proven and not presumed and that an intent to engage in a particular activity is "vastly different from an intent to cause someone bodily harm as a result of that activity." Goldsmith's position might be

meritorious if we were dealing with general insurance contract law as to liability, but we are confronted with a very narrow field within the general principles of insurance jurisprudence, namely, the sexual abuse of children. The appellate courts of Kentucky made their first excursion into the area in *Thompson, supra*, which appellant seeks to distinguish while appellee relies on it. In a most logical and well-written opinion, Judge Emberton, speaking for this Court, expressed the view:

> We believe that sexual molestation is so inherently injurious, or substantially certain to result in some injury, that the intent to injure, or the expectation that injury will result, can be inferred as a matter of law. In *Brown Foundation, supra*, the court recognized that such inferences must necessarily be made by the courts because of the nature and circumstance of the particular fact situation:
>
> > Certainly the circuit judge is not absolutely prohibited from inferring on summary judgment that an insured intended or expected damage regardless of whether the objective or subjective test is used. In some cases, it is almost irrelevant whether an objective or subjective test is applied because of the circumstances.
>
> *Id.* at 277. The emotional and psychological harm caused by sexual molestation is so well recognized, and so repugnant to public policy and to our sense of decency, that to give merit to a claim that no harm was intended to result from the act would be utterly absurd. *Horace Mann Insurance Company v. Leeber*, 180 W.Va. 375, 376 S.E.2d 581 (1988).

*Thompson* at 581.

Although 1992 was Kentucky's first incursion into the field of insurance-child molestation law, it is nothing new to many state and federal courts, two of which have rendered opinions reflecting exhaustive research culminating in the expressions of the majority views. Chief Judge Crabb of the U.S. District Court, Western District of Wisconsin, authored *Whitt v. DeLeu*, 707 F.Supp. 1011 (W.D.Wis.1989), while Judge Rosenn wrote

for the Third Circuit in *Wiley v. State Farm Fire & Casualty Co.,* 995 F.2d 457 (3rd Cir. 1993). At the time of its release *Whitt* pointed out that some sixteen states had adopted the majority rule that infers intent to cause injury as a matter of law in liability insurance cases involving alleged sexual misconduct against minors. *Whitt* quoted from *Horace Mann Ins. Co. v. Leeber, supra,* (a case relied upon in *Thompson, supra* ) to the effect:

> ... that the act [child molestation] is considered a criminal offense for which public policy precludes a claim of unintended consequences, that is, a claim that no harm was intended to result from the act. *(Leeber* at 585).

Judge Crabb mentioned five states that followed the minority rule when he wrote his opinion, namely, Alabama, California, Colorado, Florida and New Hampshire. Since that time several of those states have reversed themselves and adopted the majority rule such as Alabama *(State Farm Fire & Cas. Co. v. Davis,* 612 So.2d 458 (Ala.1993)); Colorado *(Allstate Ins. Co. v. Troelstrup,* 789 P.2d 415 (Colo.1990), *rev'g.* 768 P.2d 731 (Colo.Ct. App.1988)) and Florida *(Landes v. Allstate Ins. Co.,* 546 So.2d 1051 (Fla.1989)). In addition, contrary to what appellant implies by way of brief *(James M. v. Sebesten,* 270 Cal.Rptr. 99 (1990)) California has subscribed to the majority view in *J.C. Penny Casualty Co. v. M.K.,* 52 Cal.3d 1009, 278 Cal.Rptr. 64, 804 P.2d 689 (1991). As of November, 1993, thirty-four states have adopted the majority rule of inferred intent *(see* enumeration of jurisdictions at footnote 8 of *B.B. v. Continental Ins. Co.,* 8 F.3d 1288, 1293 (8th Cir. 1993)), which gives cause for us to conjecture just why this appeal was submitted. One of the most logically reasoned statements as to the reason for the rule is set forth in *B.B., supra,* at 1293 quoting from *Whitt, supra,* to the effect:

> The [inferred-intent] approach ... stands for the proposition that a person who sexually manipulates a minor cannot expect his insurer to cover his misconduct and cannot obtain such coverage simply by saying that he did not mean any harm. The courts following the majority approach have concluded that sexual misconduct with a minor

is objectively so substantially certain to result in harm to the minor victim, that the perpetrator cannot be allowed to escape society's determination that he or she is expected to know that. Hence, these courts infer the intent to harm as a matter of law in sexual misconduct liability insurance cases involving minors.

Lest there be no misunderstanding, we reapply the inferred-intent rule in this specific category of insurance law involving acts of child molestation cases "without displacing a subjective or objective intent standard in other categories of liability insurance cases." *Wiley, supra; Horace Mann Ins. Co. v. Fore,* 785 F.Supp. 947, 949–56 (M.D.Ala. 1992).

■ We now turn to the issue of the applicability of the inferred-intent rule when the insured asserts an incapacity to form an intent to harm as is argued by the appellant based upon the expert evidence of Dr. Lehne. Keeping in mind that the parties herein do not dispute that Wheeler's conduct was intentional, but only the existence of his specific intent to harm, we now return to the Third Circuit's opinion in *Wiley, supra.* Commencing at p. 465 Judge Rosenn reviews the three basic lines of treatment of the issue and concluded at p. 467:

> The first approach offers the better rule because in exceptional cases such as sexual child abuse, where the insured's conduct is both intentional and of such a nature and character that harm inheres in it, that conduct affords a sufficiently clear demonstration of intent to harm subsuming any need for a separate inquiry into capacity. Once it is determined, strictly by examining the nature and character of the act in question, that it is appropriate to apply the inferred intent rule, then the actor's actual subjective intent to harm or capacity to form that intent becomes irrelevant. *[Allstate Insurance Company v.] Roelfs,* 698 F.Supp. [815] at 820–21 nn. 6–7 [ (D.Alaska 1987) ]; *Troelstrup,* 789 P.2d at 419; *[Mutual of Enumclaw v.] Merrill,* [102 Or.App. 408] 794 P.2d [818] at 820 [ (1990) ]; *[State Farm Fire & Cas. Co. v.] Abraio,* 874 F.2d [619] at 623 [ (9th Cir.1989) ] (relying on

*[Fire Ins. Exchange v.] Abbott,* [204 Cal. App.3d 1012] 251 Cal.Rptr. 620 [ (1988) ] ). At that point, it does not matter whether a subjective intent existed or why it did or did not exist. *[Public Employees Mut. Ins. Co. v.] Rash,* [48 Wash.App. 701] 740 P.2d [370] at 373 [ (1987) ]. Once subjective intent is deemed irrelevant, an actor who is unable to form the intent to harm is indistinguishable from one who could have formed the intent but claims he or she did not.

We totally agree with the foregoing view and hereby extend the views of *Thompson, supra,* to reflect the same.

■ Goldsmith maintains that public policy should not preclude recovery and in this respect we again refer to *B.B., supra,* at 1295 for the succinct response to this issue, namely:

We also believe that sound public policy supports our prediction that Missouri would adopt the inferred-intent standard in this case. "[T]he desire to place moral liability with the same precision with which we would place economic liability gives force to the [subjective-intent standard]". *Horace Mann Ins. Co.* 785 F.Supp. at 955. Forcing the insurer to indemnify the insured "subsidizes the episodes of sexual abuse of which its victims complain, at the ultimate expense of other insureds to whom the added costs of indemnifying child molesters will be passed." *Id.* at 956. "[T]he average person purchasing homeowner's insurance would cringe at the very suggestion that he was paying for [coverage for liability arising out of his sexual abuse of a child]. And certainly he would not want to share that type of risk with other homeowner's policy holders." *Wiley,*

995 F.2d at 464 (internal quotes omitted) (second alteration in original). We are aware that application of the inferred-intent standard will deny B.B. another source of compensation for his injuries, *see id.,* but we agree with other courts that have determined that the benefit of ensuring compensation of the victim " 'is outweighed by the effect of allowing sexual offenders to escape having to compensate minors for the harm that the courts have established is inherent in such offenses.' " *Horace Mann Ins. Co.,* 785 F.Supp. at 955 (quoting *Whitt,* 707 F.Supp. at 1016).

Goldsmith's assertions that Wheeler lacked the subjective intent to harm, even to the extent they are grounded in an alleged inability to formulate such intent, are irrelevant and do not create a genuine issue of material fact precluding a summary judgment. We say again that even though *Steelvest, Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991), makes summary judgments more difficult to attain, it does not prohibit them in all cases. Application of the inferred-intent standard resolves all issues of material fact thus entitling appellee to summary judgment. In addition, if there exists no possibility for coverage then there is no duty to defend.

The judgment is affirmed.

All concur.