Brian PARSLEY, Appellant,

v.

KENTUCKY FARM BUREAU
MUTUAL INSURANCE
COMPANY, Appellee.

No. 1999–CA–000808–MR.

Court of Appeals of Kentucky.

Sept. 29, 2000.

Alton L. Cannon, Leitchfield, for Appellant.

Kelly Mark Easton, Elizabethtown, for Appellee.

Before: HUDDLESTON, JOHNSON and KNOPF, Judges.

## OPINION

JOHNSON, Judge:

Brian Parsley has appealed from a declaratory judgment entered by the Grayson Circuit Court that ruled that Kentucky Farm Bureau Mutual Insurance Company has no duty to defend its insured, Steve Crawford, and is not obligated, under the terms of the homeowner's policy it had issued to Crawford, to provide coverage for the damages sustained by Parsley while a guest in Crawford's home. Crawford's insurance policy excluded from personal liability and medical coverage any "bodily injury or property damage [ ] which is expected or intended by the [i]nsured." Parsley argues that the trial court erred in deciding, as a matter of law, that Crawford "intended the consequences of [his] action[s]," which, he insists "is normally a question of fact and not one of law." Since we believe there is no possibility that Crawford was merely negligent, we affirm the declaratory judgment.[1]

---

1. The standards governing the trial court's resolution of a motion for summary judgment pursuant to Kentucky Rules of Civil Procedure (CR) 56.03, and this Court's standard of review of a summary judgment, are set forth in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991) and *Scifres v. Kraft*, Ky.App., 916 S.W.2d 779 (1996), respectively.

On the evening of August 2, 1993, Parsley sustained serious injuries at Crawford's home after being beaten by Crawford and three of Crawford's other guests, Russell Bush, Robert Bush, and Michael Mattingly. After hitting Parsley with their fists, kicking him with their feet, and assaulting him with various objects including an ax handle, numchucks, and homemade brass knuckles, Crawford and his three guests put Parsley in the trunk of a car and transported him to a deserted bridge. Parsley was then subjected to further beatings and other indignities by the four men and was then thrown off the bridge. Parsley fell 15 feet to the creek below where he was left to drown. After some period of time, Crawford returned and took Parsley to the hospital for treatment.

The four men who participated in the beating and kidnaping of Parsley, were indicted on various criminal charges and tried before a jury in the Grayson Circuit Court on March 23, 1994. Crawford, who acknowledged at his criminal trial that he hit Parsley three or four times, was convicted of two counts of complicity to commit assault in the first degree and complicity to commit kidnaping; he was sentenced to serve five years in prison.[2]

On August 2, 1994, Parsley filed a lawsuit against Crawford, Robert Bush, Russell Bush and Mattingly. In his complaint, Parsley alleged that Crawford and the others, "intentionally, willfully or negligently caused [him] serious physical injury." He sought damages to compensate him for his physical and mental pain and suffering, lost wages, the permanent impairment of his ability to earn wages, and his hospital and medical expenses. Farm Bureau, which had filed an answer on behalf of its insured, Crawford, under a reservation of rights, moved for leave to file an intervening petition for declaratory judgment claiming that it had no duty to defend or indemnify its insured on the basis that his actions were intentional and thus excluded by the terms of his insurance policy.

In response to Farm Bureau's motion for summary judgment, both Crawford and Parsley argued that the events of August 2, 1993, comprised an "accident," as defined by the homeowner's policy and that, essentially, they were in the wrong place at the wrong time. They described Crawford's conduct on the night Parsley was beaten as passive and merely negligent in allowing the other three to get drunk and inflict injury on Parsley. They also relied on the fact that Crawford had been convicted of the crimes of complicity to commit the offenses of assault and kidnaping, and not the underlying offenses themselves. They argued that since a person could be found guilty of complicity if he fails to perform a legal duty to prevent the commission of an offense, a jury could believe that Crawford did not intend for Parsley to be injured.

The matter was set for trial to commence in March 1999. On December 15, 1998, the trial court entered its opinion and order granting Farm Bureau's motion for summary judgment. The trial court ruled that the jury's verdict necessarily required the jury to find that Crawford intended the injuries Parsley suffered as follows:

> [Crawford's] homeowner's policy excludes from coverage an "intentional["] loss, meaning any loss arising out of any act committed: (a) by or at the direction of an insured; and (b) with the intent to cause a loss. [Crawford] was convicted of having aided and assisted the others in committing the offenses causing the

2. The video record of the testimony in the criminal case was made a part of the record in the case *sub judice*. Crawford testified at his criminal trial that he tried to get the other defendants to stop hitting Parsley and that the only reason he hit Parsley was to keep from incurring the same fate as Parsley. The other defendants testified that Crawford was a very active participant in the beating and that it was Crawford that wanted Parsley beaten in the first place. They testified that Crawford was motivated to harm Parsley by a belief that Parsley had informed authorities about his alleged marijuana operation.

loss with the intent to promote or facilitate the offense. In this case not only was actual intent to facilitate the offense found by the jury but the jury also found that he actually acted to aid in the commission of the crime. Certainly, in this case [Crawford] acted along with others to intentionally cause the injuries sought to be recovered for.[3]

The order dismissing Farm Bureau was made final and appealable by the trial court, and the matter was continued generally pending this appeal.[4]

■ In this appeal, Parsley argues that the dispute should be governed by the Restatement (Second) of Torts § 318 (1965), which was adopted by this Court in *Grimes v. Hettinger*,[5] a case in which a swimming pool owner was determined to have a duty to control the behavior of his guests "to prevent an unreasonable risk of harm" to any of them. We do not, however, find this section of the Restatement to be applicable under the circumstances presented in the case *sub judice*. The record reveals that Crawford did not merely fail to protect Parsley from unreasonable harm caused by the behavior of his other guests, but rather that Crawford actively participated in the harm-producing conduct.

We agree with the trial court, that the language of Crawford's policy and settled case law interpreting the same or similar provisions, preclude a determination that Crawford's homeowner's policy affords coverage for the injuries sustained by Parsley, injuries which relate to, and result from, the criminal acts for which the insured was convicted. Parsley's argument that Crawford's conduct should be viewed as negligent conduct rather than criminal conduct overlooks the fact that a jury determined that Crawford was not merely negligent, but that his conduct constituted the crime of complicity to commit assault in the first degree and complicity to commit kidnaping.

The facts in this case are nearly identical to those in *Willis v. Hamilton Mutual Insurance Co.*,[6] with the exception that the insured in *Willis* was convicted of assault and not, as Crawford, complicity to commit assault in the first degree. However, the attempt to rely upon such a distinction is unavailing since, by definition, the crime of complicity contains the element of intent.[7] Furthermore, in order to convict Crawford, the instructions in the criminal case required the jury to believe that he intended to promote or facilitate the assault on Parsley.[8] Clearly, Crawford's conviction

---

3. On March 17, 1999, the trial court denied Parsley's CR 59 motion to vacate the summary judgment.

4. Because the four defendants were incarcerated as a result of their criminal convictions and apparently without assets worth pursuing, Parsley informed the trial court that he was not interested in proceeding to trial should it be determined that there was no insurance coverage to satisfy any damages that might be awarded.

5. Ky.App., 566 S.W.2d 769, 774 (1978).

6. Ky.App., 614 S.W.2d 251 (1981)(insurer not liable for judgment against its insureds for assault against plaintiff).

7. *See* Kentucky Revised Statutes 502.020(1) which reads:

   A person is guilty of an offense committed by another person when, with the intention

of promoting or facilitating the commission of the offense, he:
   (a) Solicits, commands, or engages in a conspiracy with such other person to commit the offense; or
   (b) Aids, counsels, or attempts to aid such person in planning or committing the offense; or
   (c) Having a legal duty to prevent the commission of the offense, fails to make a proper effort to do so.

8. The jury was instructed in the criminal case, in part, to find Crawford guilty on both counts of complicity to commit assault in the first degree if it believed beyond a reasonable doubt that "Steve Crawford, with the intention of promoting or facilitating Assault in the First Degree upon Brian Parsley aided and/or assisted other persons in their commission of the offense, and this act was not justified under Instruction No. 12(6)." The instruction for complicity to commit kidnaping contained identical language regarding intent.

of complicity to commit the crimes of assault and kidnaping, implicates the policy's provision which excludes coverage for "bodily injury ... expected or intended by the [i]nsured."

We agree with Parsley's observation that one's intent is normally a question for the jury.[9] However, this Court has recognized that intent may be inferred as a matter of law in certain circumstances.[10] For example, in *Walker*, this Court upheld a summary judgment applying a policy exclusion to deny coverage to the plaintiff who was injured after being hit in the face by the insured. This Court observed in *Walker* that striking another in the face is "an act so certain to cause a particular kind of harm that we can say a person who performed the act intended the resulting harm."[11] By comparison, Parsley's beating was many times more severe and more certain to cause harm than the single punch in the face experienced by Mr. Walker. Accordingly, we hold that since the crimes for which Crawford was convicted required a finding of intent, that this finding precludes re-litigation of the issue of Crawford's subjective intent to cause bodily injury within the policy's exclusion.

The judgment of the Grayson Circuit Court is affirmed.

ALL CONCUR.

9. *James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Insurance Co.*, Ky., 814 S.W.2d 273 (1991).

10. *Willis, supra* at 252. *See also Thompson v. West American Insurance Co.*, Ky.App., 839 S.W.2d 579, 581 (1992) (some conduct is "so inherently injurious, or substantially certain to result in some injury, that the intent to injure, or the expectation that injury will result, can be inferred as a matter of law"); *Goldsmith v. Physicians Insurance Co. of Ohio*, Ky.App., 890 S.W.2d 644 (1994) (intent

inferred as a matter of law despite claim of diminished capacity to form intent); *Walker v. Economy Preferred Insurance Co*, Ky.App., 909 S.W.2d 343, 345 (1995) ("trial judge may, in some circumstances, conclude as a matter of law that the party intending to act also intended the resulting damage").

11. *Walker* (citing *Clark v. Allstate Insurance Company*, 22 Ariz.App. 601, 529 P.2d 1195 (1975)).