*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

CONTINENTAL INSURANCE CO.,

                *Plaintiff-Appellee,*

    *v.*

KAREN ADAMS, ANDREW SLENTZ, ESTATE OF JOHN
S. KECK,

                *Defendants-Appellants.*

No. 04-6450

>

---

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 01-00222—Charles R. Simpson III, District Judge.

Argued: October 25, 2005

Decided and Filed: January 20, 2006[*]

Before: SILER and CLAY, Circuit Judges; CARR, District Judge.[**]

---

## COUNSEL

**ARGUED:** John D. Cox, LYNCH, COX, GILMAN & MAHAN, Louisville, Kentucky, for
Appellants. Griffin Terry Sumner, FROST BROWN TODD, Louisville, Kentucky, for Appellee.
**ON BRIEF:** John D. Cox, LYNCH, COX, GILMAN & MAHAN, Louisville, Kentucky, for
Appellants. Griffin Terry Sumner, FROST BROWN TODD, Louisville, Kentucky, for Appellee.

    SILER, J., delivered the opinion of the court, in which CARR, D. J., joined. CLAY, J. (pp.
4-6), delivered a separate concurring opinion.

---

## OPINION

---

    SILER, Circuit Judge. Defendants Karen Adams, Andrew Slentz and the Estate of John S.
Keck appeal the grant of summary judgment to Plaintiff Continental Insurance Co., declaring that

---

[*] This decision was originally issued as an "unpublished decision" filed on January 20, 2006. On February 22,
2006, the court designated the opinion as one recommended for full-text publication.

[**] The Honorable James G. Carr, United States District Judge for the Northern District of Ohio, sitting by
designation.

1

a homeowners insurance policy held by decedent John Keck did not cover intentional injuries to Adams and Slentz. For the reasons set forth below, we AFFIRM.

## I. Background

In 1999, Keck went to the home of his ex-girlfriend, Adams, and demanded that she choose between him and her new boyfriend, Slentz. Adams chose Slentz. Keck left and returned thirty minutes later with a rifle. He shot at Adams several times from close range, wounding her. Keck then chased Slentz who was also at the home, and eventually shot him. Keck then killed himself.

Adams and Slentz sued Keck's estate along with Continental Insurance Co., with whom Keck had a homeowners insurance policy. Keck's estate settled, at which point Continental removed the action to federal district court. Continental filed for a declaratory judgement, consolidated the two actions, and moved for summary judgment.

At issue was whether Keck's actions were intentional, given the following provision in Continental's insurance agreement with Keck:

> **LOSSES WE DO NOT COVER**
>
> **1. Personal Liability and Medical Expense** coverages do not apply to ***bodily injury*** or ***property damage***:
>
> h. Intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of one or more ***covered persons***. This exclusion applies even if:
>
> (1) Such ***covered person*** lacks the mental capacity to govern his or her conduct[.]
>
> . . . .
>
> This exclusion applies regardless of whether or not such ***covered person*** is actually charged with or convicted of a crime.

The district court denied summary judgment, permitting discovery as to Keck's "intent and his understanding of the physical nature of the consequences of his actions on November 1, 1999." Dr. Patrick Hardesty, a psychologist, testified as an expert on behalf of Adams and Slentz that Keck could not have understood the physical nature of the consequences of his actions, while Continental's expert reached the opposite conclusion. At the close of discovery, Continental renewed its motion for summary judgment, which the district court granted, concluding that the inferred intent rule applied and that Keck's mental capacity at the time of the shooting was irrelevant given the contract provision.

## II. Discussion

This court reviews the district court's grant of summary judgment *de novo*. *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 274 (6th Cir. 2003). Because this case is in federal court under the diversity statute, 28 U.S.C. § 1332, Kentucky substantive law governs. *See Gahafer v. Ford Motor Co.,* 328 F.3d 859, 861 (6th Cir. 2003). Adams and Slentz contend that Keck's mental capacity bore upon his ability to form the requisite intent and, therefore, should be decided by a jury.

Normally, intent is a question for the jury. *See James Graham Brown Found., Inc. v. St. Paul Fire and Marine Ins. Co.,* 814 S.W.2d 273, 276 (Ky. 1991). However, this is not a per se rule. A

court may infer intent on summary judgment "where the insured's conduct is both intentional and of such a nature and character that harm inheres in it, that conduct affords a sufficiently clear demonstration of intent to harm subsuming any need for a separate inquiry into capacity." *Goldsmith v. Physicians Ins. Co. of Ohio*, 890 S.W.2d 644, 646 (Ky. Ct. App. 1994) (internal citation omitted). Thus, summary judgment can be appropriate since "such inferences must *necessarily* be made by the courts because of the nature and circumstance of the fact situation." *Goldsmith,* 890 S.W.2d at 645 (emphasis added) (*citing Brown Found.*, 814 S.W.2d at 277).

Here, the evidence as to Keck's actions was uncontroverted. There was no question of material fact as to whether Keck acted intentionally when he retrieved the rifle, returned to Adams's home, and shot both Adams and Slentz at close range. Thus, summary judgment was proper. A claim that the shooting was somehow unintentional "would be unsound." *See James v. Ky. Farm Bureau Mut. Ins. Co.*, 2003 Ky. App. LEXIS 312, at *13-14 (Ky. Ct. App. Dec. 12, 2003).

Adams and Slentz contend that *Goldsmith* is limited to evidence of the extraordinary circumstance of child molestation, and the competing expert testimony raised a material issue of fact as to Keck's ability to form the requisite intent. Both of these are incorrect. First, Kentucky courts have not so restricted *Goldsmith*'s scope. *See, e.g., James,* 2003 Ky. App. LEXIS 312, at *13 (shooting into crowd permitted inference of intent); *Walker v. Econ. Preferred Ins. Co.*, 909 S.W.2d 343, 345 (Ky. Ct. App. 1995) ("[T]he 'inherently injurious' act of punching someone in the face supports the trial judge's inference as a matter of law that [the insured] intended to injure [the plaintiff]."); *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 812-13 (Ky. Ct. App. 2001) (discussing applicability of inferred intent rule to man who pointed gun at and shot son).[1]

Second, the expert testimony as to Keck's mental capacity was irrelevant. The insurance policy's plain language unambiguously precludes coverage for losses incurred through an insured's intentional act, even if the insured "lacks the mental capacity to govern his . . . own conduct." Clauses limiting liability to unintentional acts irrespective of mental capacity have long been enforceable in Kentucky. *See, e.g., Colonial Life & Accident Ins. Co. v. Wagner*, 380 S.W.2d 224, 226-27 (Ky. 1964) (it was irrelevant whether the assailant was insane because "under the terms of the policy the act was intentional and therefore specifically excluded from the coverage."). Furthermore, "[i]t is settled Kentucky law . . . that the court must give all terms their plain meaning and not rewrite an insurance contract to enlarge that risk." *United States Fid. & Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31, 33 (6th Cir. 1988) (citations omitted). While this exclusionary clause apparently was not in the insurance policies in prior cases, it is plain that the intent behind its inclusion was to preclude any insanity defense that the insured lacked the mental capacity to commit the act involved.

AFFIRMED.

---

[1] Adams and Slentz contend that *Stone* did not decide the case upon the inferred intent rule. *See* 34 S.W.3d at 813. However, the court of appeals, in *Stone,* remarked that "the inferred intent exception referred to in the *Brown Foundation* case and utilized in *Thompson [v. West Am. Ins. Co.*, 839 S.W.2d 579 (Ky. Ct. App. 1992)] has been applied in a context other than sexual molestation." 34 S.W.3d at 812.

---

## CONCURRENCE

---

CLAY, Circuit Judge, concurring.  Although I agree with the majority's conclusion that summary judgment was proper because the language of the contract renders Keck's mental state irrelevant, I write separately to express my disagreement with the majority's treatment of *Goldsmith*'s inferred-intent rule, and to address an argument that the majority ignores, namely that the language of the intentional act exclusion does not apply because Keck did not intend to harm Defendants.[1]

### I.
### Background

At issue in this case is the applicability of a so-called "intentional act" exclusion to damage caused by the insured, John Keck.  The exclusion protects the Plaintiff, Continental Insurance Company, from liability for "bodily injury or property damage . . . [i]ntended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions" of the insured. It further states that "[t]his exclusion applies even if . . . [s]uch covered person lacks the mental capacity to govern his or her conduct."

Defendants argue that the intentional act exclusion does not apply both because: (1) Keck did not act intentionally; and (2) Keck did not intend to cause any damage or bodily injury. Defendants support their allegations that Keck neither acted intentionally nor intended to cause damage with the affidavit of Dr. Hardesty.  According to Dr. Hardesty, Keck was unable to understand the physical nature of the consequences of his actions.  In other words, Keck was incapable of recognizing that shooting Defendants would harm them.

Plaintiff argues that whether Keck intended to act or intended to cause harm is irrelevant in determining its liability for damages caused by Keck.  According to Plaintiff, the policy itself renders Keck's intent to act and/or cause harm irrelevant because it states, "This exclusion applies even if . . . [s]uch covered person lacks the mental capacity to govern his or her conduct." Additionally, Plaintiff asserts that under Kentucky law intent to act and/or cause harm is conclusively inferred as a matter of law where the insured's actions are inherently injurious in nature.  Applying the inferred-intent rule, the district court found as a matter of law that Keck intended to act as he did and granted summary judgment. Contrary to the majority's characterization of the district court's opinion, the district court did not rule on the language of the contract.

### II.
### The Inferred-Intent Rule

The permutation of the inferred-intent rule discussed in this case derives from the Kentucky Court of Appeals' decision in *Goldsmith v. Physicians Ins. Co. of Ohio*, 890 S.W.2d 644 (Ky. Ct. App. 1995).  It refers to a court's obligation to infer an insured's intent to cause damage or harm, conclusively, regardless of the insured's actual mental state and applies primarily in sexual molestation cases. *Id.* at 646-47. The Kentucky Court of Appeals reasoned that this conclusive inference was appropriate for policy reasons. *Id.* at 647.  Quoting an earlier decision with approval, the Kentucky Court of Appeals wrote, "'The emotional and psychological harm caused by sexual

---

[1]The majority's position is not entirely clear because the majority uses the term intent indiscriminately without clarifying whether it means intent to act or intent to harm, both of which are at in issue in this case.

molestation is so well recognized, and so repugnant to public policy and to our sense of decency, that to give merit to a claim that no harm was intended to result from the act would be utterly absurd.'" *Id.* at 645 (quoting *Thompson v. W. Am. Ins. Co.*, 839 S.W.2d 579, 581 (Ky. Ct. App. 1992)).

Despite homicide's injurious nature, the Kentucky Court of Appeals has been unwilling to extend *Goldsmith*'s conclusive and irrebuttable inference beyond sexual molestation cases to homicides. The Kentucky Court of Appeals emphasized the limited applicability of *Goldsmith*'s irrebuttable inference stating, "Lest there be no misunderstanding, we reapply the inferred-intent rule in this specific category of insurance law involving acts of child molestation cases 'without displacing a subjective or objective intent standard in other categories of liability insurance cases.'" *Id.* at 646. Moreover, in its most recent published decision on this issue, *Stone v. Kentucky Farm Bureau Mutual Insurance Co.,* 34 S.W.3d 809, 813 (Ky. Ct. App. 2000), the Kentucky Court of Appeals expressly declined to extend *Goldsmith* to a homicide. It stated, "[n]otwithstanding the possible application of the approach adopted in *Goldsmith*, we are guided by another case concerned with the law in Kentucky as it relates to insurance coverage and the acts of the mentally ill." *Id.* Thereafter, the court adopted this Court's approach in *Nationwide Mutual Fire Insurance Co. v. May,* 860 F.2d 219 (6th Cir. 1989). Following *Nationwide,* the court in *Stone* held that an insured had the right to offer psychiatric evidence that he was unable to form the requisite intent to cause harm, and that if the insured could offer such evidence that summary judgment was improper despite the inherently injurious nature of homicide. *Id.* 813-14. Thus, *Stone* makes clear that the inferred-intent rule as applied in *Goldsmith* does not apply outside the sexual molestation context.

*Walker v. Economy Preferred Insurance*, 909 S.W.2d 343 (Ky. Ct. App. 1995) does not support a contrary position because *Walker* does not address whether it is proper to *irrebuttably* presume intent to damage where a party offers reliable evidence that no such intent existed.[2] In *Walker,* the Kentucky Court of Appeals held that some intentional acts by an insured are so inherently injurious that intent to damage will be presumed on summary judgment, despite an insured's testimony to the contrary. *Walker,* S.W. 2d at 343; *see also Stone*, 34 S.W.3d at 813. In other words*,* an insured's bare assertion that he or she did not intend to cause harm will not create a genuine issue of material fact where the insured's actions are of the kind that a reasonable person would expect to cause harm. *Walker*, 909 S.W.2d at 343. *Walker* does not dispute the proposition that medical evidence of an insured's inability to form the requisite intent to damage may create a genuine issue of material fact. In fact, no party in *Walker* even offered such evidence.

In this case, the damage which occurred did not result from the insured's act of sexual molestation, but rather his shooting of Defendants. Thus, the insured's conduct in this case is more akin to the insured's conduct in *Stone*, and *Goldsmith*'s irrebuttable presumption does not apply. Because Defendants do offer evidence creating a genuine issue of fact as Keck's ability to form an intent to cause damage in the form of Dr. Hardesty's affidavit, Kentucky law as articulated in *Stone* does not permit this Court to infer Keck's intent to cause damage from the nature of his acts. Thus, the district court erred in applying the inferred-intent rule to conclusively infer Keck's intent to cause damage.

---

[2] The only case that might support the majority's position is *James v. Kentucky Farm Bureau,* No 2002-CA-001738-MR, 2003 Ky. App. LEXIS 312 (Ky. Ct. App. Dec. 12, 2003). *James* is an unpublished opinion, however, and cannot be cited as precedent in any court in Kentucky. *See id.* Therefore, this Court should not choose to apply it over *Stone*, a published decision of the Kentucky Court of Appeals. 34 S.W.3d at 809.

### III.
### Language of the Insurance Contract

Although the inferred-intent rule was not a proper basis for summary judgment, summary judgment was nonetheless proper because the language of the insurance contract rendered both Keck's intent to act and intent to cause damage irrelevant. As the majority correctly recognizes, the language of the contract stating that the intentional act exclusion applies "even if . . . [s]uch covered person lacks the mental capacity to govern his or her conduct" renders Keck's intent to act irrelevant. *See* Black's Law Dictionary 292 (7th ed. 1999) (quoting J.W. Cecil Turner, *Kenny's Outlines of Criminal Law*, 13 n.2, 24 (16th ed. 1952) (defining conduct as acts and omissions). This clause, however, does not render Keck's intent to cause damage irrelevant. *See id.* A person can have the capacity to govern his or her own conduct, *i.e.* the ability to physically control his or her own actions, and nonetheless not intend to cause damage by his or her actions.

In addition to this language, however, the intentional act exclusion in this case also states that Plaintiff is not responsible for "bodily injury or property damage . . . [i]ntended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions" of the insured. Although no Kentucky court to date has interpreted similar language, courts addressing similar language in other states have held that the phrase "which may reasonably be expected to result" denotes an objective as opposed to subjective standard of coverage rendering the insured's intent to cause damage irrelevant. *Allstate Ins. Co. v. McCarn*, 683 N.W.2d 656 (Mich. 2004); *Wallace v. Allstate Ins. Co.*, No. Civ.A. CV-02-008, 2003 WL 21018821 (Me. April 18, 2003) (unpublished); *Erie Ins. Co. v. St. Stephen's Episcopal Church,* 570 S.E.2d 763 (N.C. Ct. App. 2002) *King v. Galloway*, 828 So.2d 49 (La. Ct. App. 2002). "That is, we are to determine whether a reasonable person possessed of the totality of the facts possessed by [the insured] would have expected the resulting injury." *McCarn*, 683 N.W.2d at 660. This interpretation is persuasive because it comports with the plain and ordinary meaning of "may reasonably be expected to result." *See James Graham Brown Found.*, 814 S.W.2d at 279 (holding that under Kentucky law the terms of insurance contracts are to be interpreted as according to the usage of the ordinary man). Therefore, because a reasonable person in Keck's position would have expected damage to result from the shooting, the damage at issue in this case was "reasonably . . . expected to result" and is excluded from coverage by the intentional acts exception of the policy.

### IV.
### Conclusion

For the foregoing reasons, I would affirm the order of the district court.