**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 14a0421n.06

**Case Nos. 13-1959/1960**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Jun 11, 2014

DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNIVERSAL SETTLEMENTS INTERNATIONAL, INC., a Canadian corporation, | ) ) ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee (13-1959), | ) | UNITED STATES DISTRICT |
| Defendant-Appellee (13-1960), | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| NATIONAL VIATICAL, INC.; JAMES TORCHIA, | ) ) | |
| | ) | **OPINION** |
| Defendants-Appellants (13-1959), | ) | |
| Plaintiffs-Appellants (13-1960), | ) | |
| | ) | |
| MARC A. CELELLO, | ) | |
| | ) | |
| Defendant. | ) | |

BEFORE: MOORE and COLE, Circuit Judges; and DRAIN, District Judge.[*]

COLE, Circuit Judge. An oral settlement agreement fell apart after National Viatical ("National Viatical") and James Torchia accused Universal Settlements International ("Universal Settlements") of publishing confidential settlement terms on its publicly-accessible website. National Viatical and Torchia sued for breach of contract, and the district court granted summary judgment to Universal Settlements. Because there is no genuine dispute of material fact as to

---

[*] The Honorable Gershwin A. Drain, United States District Judge for the Eastern District of Michigan, sitting by designation.

whether a breach of confidentiality occurred, we affirm the grant of summary judgment. In a separate opinion, the district court entered a $5 million consent judgment against National Viatical and Torchia because they defaulted on their obligations under the settlement agreement. Because consent judgments must be strictly construed, we affirm the court's entry of judgment.

## I. BACKGROUND

Days before trial, National Viatical and Torchia entered into a settlement agreement with Universal Settlements, and the terms of the agreement were placed on the record before Magistrate Judge Ellen Carmody. The agreement required National Viatical and Torchia to pay Universal Settlements $1 million in four installments within one year and to pledge collateral to secure this payment. In exchange, the parties agreed to mutually release one another of all claims and cross-claims. The parties stipulated that a $5 million consent judgment would be entered against National Viatical and Torchia if they defaulted on their payment obligation.

At the settlement conference, National Viatical and Torchia requested a "standard mutual confidentiality agreement," but this request was difficult to accommodate. Because Universal Settlements had previously sought relief in a Canadian bankruptcy court, it had to notify the court about the settlement and follow its instructions with respect to disclosure. Accordingly, the parties agreed that limited information could be provided to the court and others on a need-to-know basis. At the time, however, the parties did not know what the Canadian court would require regarding disclosure, and Universal Settlements' counsel explained that other entities "might possibly have to be exempted [from confidentiality]." Nevertheless, the parties agreed to work in good faith to maintain confidentiality.

Soon after the settlement conference, Universal Settlements published a "Notice of Settlement" on its website, conveying the following information: (1) the settlement amount,

(2) the payment structure, and (3) the possibility of sanctions in the event of default. Universal Settlements also provided this information to its creditors and to the monitor of its restructuring. Though the notice provided the total settlement amount, it did not identify how the amount would be divided between National Viatical and Torchia, nor indicate the amount of the consent judgment, nor say who would be liable for the judgment in the event of default.

Troubled by the disclosures, National Viatical and Torchia refused to pay the $1 million the settlement required. After providing National Viatical and Torchia with notice and an opportunity to cure the default, Universal Settlements moved for summary judgment on the breach of contract claim and sought to enforce the $5 million consent judgment. After the district court granted both motions in Universal Settlements' favor, National Viatical and Torchia timely appealed. We have jurisdiction to review the court's orders under 28 U.S.C. § 1291.[1]

## II. ANALYSIS

### A. Breach of Confidentiality

We review the grant of summary judgment de novo. *Cont'l Ins. Co. v. Adams*, 438 F.3d 538, 540 (6th Cir. 2006). Summary judgment is required where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

National Viatical and Torchia claim there is a dispute of fact regarding whether Universal Settlements breached confidentiality. The district court concluded that no breach of

---

[1] Universal Settlements argues that National Viatical and Torchia's appeal related to the consent judgment is untimely. The district court entered judgment on June 21, 2013. National Viatical and Torchia appealed this order on July 19, 2013, which is within the thirty-day time limit required by Fed. R. App. P. 4(a)(A). The appeal is therefore timely.

confidentiality occurred because the information Universal Settlements disclosed was "generic," limited in scope, and expressly contemplated by the parties. We agree.

Although the parties were unaware of what specific instructions the Canadian court would require with respect to disclosure, Universal Settlements could not agree to absolute confidentiality because it had reporting obligations to the Canadian court. Ultimately, the court directed Universal Settlements to post a statement on its website notifying its creditors about the settlement. In National Viatical and Torchia's view, disclosure was unnecessary because Universal Settlements' creditors and the Canadian court had already approved the agreement before notice was posted. While true, National Viatical and Torchia misconstrue the purpose of disclosure, which was to provide *notice* of the settlement, not to obtain *approval* of its terms. That Universal Settlements' creditors had already approved the agreement does not dispute the fact that the Canadian court instructed the company to provide notice of the settlement to its creditors.

In essence, the parties' agreement contemplated the very disclosure Universal Settlements eventually made. At the settlement conference, Judge Carmody specifically asked National Viatical and Torchia if they agreed with the terms that were placed on the record, which included the possibility that notice could be posted on a website. They approved the agreement and did not object when Universal Settlements' counsel indicated that the settlement amount could be reported to the Canadian court. Since National Viatical and Torchia failed to request a specific method of disclosure and failed to challenge Judge Carmody's recitation of the settlement terms, summary judgment was proper.

Finding no dispute of fact on the breach of confidentiality claim, the district court also dismissed National Viatical and Torchia's argument that they sustained harm as a result of the

alleged breach. On appeal, National Viatical and Torchia claim that nominal damages are recoverable for breach of contract actions. To be sure, there are circumstances where damages may be inferred. Here, however, National Viatical and Torchia have not established a breach in the first instance; therefore, they are not entitled to damages.

## B. Ambiguity of the Confidentiality Agreement

National Viatical and Torchia's next attempt to survive summary judgment requires an examination of whether the settlement is ambiguous.[2] Arguing that it is, National Viatical and Torchia maintain that the word "website" is latently ambiguous and that it is unclear whether confidentiality pertained only to the consent judgment. We address each argument in turn.

To detect a latent ambiguity, the court must first review any extrinsic evidence, and if an ambiguity is present, it must resolve the ambiguity in light of that evidence. *Sault Ste. Marie Tribe of Chippewa Indians v. Granholm*, 475 F.3d 805, 812 (6th Cir. 2007). However, a contract term does not become ambiguous as a matter of law simply because the parties disagree about its meaning. *Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F.3d 487, 495 (6th Cir. 2005). Rather, the test for ambiguity is whether the contract language "fairly admits of but one interpretation." *Meagher v. Wayne State Univ.*, 565 N.W.2d. 401, 415 (Mich. Ct. App. 1997).

At the settlement conference, the following dialogue ensued with respect to confidentiality:

---

[2] Because settlement agreements are a type of contract, questions of their formation and enforceability are governed by state contract law. *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). The parties apply Michigan substantive law in their briefs as this is where the settlement agreement was formed. We therefore apply Michigan law in our analysis.

> Mr. Sullivan: Why don't we just exempt from the confidentiality except to the extent necessary for reporting to the Canadian court and/or taxing authorities . . . ?
> Mr. Torchia: Then they're going to put it on a *Web site, right*?
> Mr. Franzinger: I don't know.
> Mr. Torchia: *I mean, I don't care. It doesn't matter.*

National Viatical and Torchia's subjective understanding was that "website" meant PACER or its Canadian equivalent. Because contracts are "governed by what the parties said and did, and not merely by their unexpressed subjective intent," the district court properly granted summary judgment to Universal Settlements. *Fletcher v. Bd. of Educ.*, 35 N.W.2d 177, 180 (Mich. 1948). As the district court explained, "Torchia was . . . well aware of the website Universal Settlements was using to communicate with its creditors." National Viatical and Torchia's subjective understanding is insufficient to create a latent ambiguity. *Turner Holdings, Inc. v. Howard Miller Clock Co.*, 657 F. Supp. 1370, 1380 (W.D. Mich. 1987) (holding that one party's subjective intent as to the meaning of a contract term was "not sufficient to establish the existence of a latent ambiguity"); *Burkhardt v. Bailey*, 680 N.W.2d. 453, 464 (Mich. Ct. App. 2004) ("The unilateral subjective intent of one party cannot control the terms of a contract."); *Harbor Park Mkt., Inc. v. Gronda*, 743 N.W.2d 585, 589 n.3 (Mich. Ct. App. 2007). ("[O]ne party's understanding of what was intended by the [contract] language is irrelevant to determining what the language actually says."). Thus, by agreeing that notice could be posted on a "website," National Viatical and Torchia must "live by the words of their agreement." *Gronda*, 743 N.W.2d at 588.

The parties disagree over whether the consent judgment was the only settlement term subject to confidentiality. Torchia provided declaration testimony that he never agreed that the "default penalty would be the only confidential term." On summary judgment, we view this evidence as true and draw all "justifiable inferences" in National Viatical and Torchia's favor.

*Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986). But "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of . . . summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The record contradicts National Viatical and Torchia's argument that every settlement term required confidentiality. According to Judge Carmody, Torchia requested confidentiality because he did not "want it to appear to any credit authority or any other entity that he ha[d] a five-million-dollar judgment against him." Notably, National Viatical and Torchia did not correct Judge Carmody's interpretation despite her invitation. Universal Settlements' counsel shared Judge Carmody's view that the issue of confidentiality pertained only to the consent judgment and that protecting this term would "satisfy everybody's concern." Tellingly, at no point did National Viatical or Torchia indicate that all terms of the settlement agreement were to be kept confidential. Such a request would have been impossible to satisfy because Universal Settlements had to comply with the Canadian court's directives with respect to disclosure.

Admittedly, National Viatical and Torchia never stated affirmatively that the consent judgment was the only provision to safeguard. Nevertheless, they had multiple opportunities to clarify the scope of the agreement and failed to do so. Where, as here, a party "was present when the terms of the settlement agreement were read in open court and he voiced no objections thereto, we must conclude that it met his approval." *Michigan Bell Tel. Co. v. Sfat*, 442 N.W.2d 720, 723 (Mich. Ct. App. 1989); *see also City of Detroit v. Simon*, 247 F.3d 619, 629 (6th Cir. 2001) (holding that a party has effectively accepted a settlement term where that party failed to express any reservation about an agreement placed on the record); *The Beale Grp., Inc. v. Weiner*, No. 253257, 2005 WL 1413178, at *4 (Mich. Ct. App. June 16, 2005) ("Defendants'

carelessness in agreeing to the settlement, without taking the time to ensure that they fully understood its ramifications, is not the type of mistake that will allow defendants to avoid enforcement of the agreement."). Thus, there is no dispute that the confidentiality term protected only the $5 million consent judgment.

## C. National Viatical and Torchia's Performance is Not Excused

Because of Universal Settlements' alleged breach, National Viatical and Torchia claim their performance is excused. Under Michigan law, a party who commits the first "substantial breach" of a contract "cannot maintain an action against the other contracting party for failure to perform." *Chrysler Int'l Corp. v. Cherokee Exp. Co.*, 134 F.3d 738, 742 (6th Cir. 1998). A breach is substantial if it has changed the "essential operative elements of the contract [such] that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party." *Id*. (internal quotation marks omitted).

National Viatical and Torchia claim that confidentiality was essential and that they would not have settled the case without it. While the benefit of their bargain may have contemplated some level of confidentiality, this was not the only consideration (or even primary consideration) they received. After the settlement, Universal Settlements' lawsuit was dismissed, National Viatical and Torchia avoided trial and the possibility of suffering an adverse judgment, and they were released of Universal Settlements' claims. Additionally, even if the breach altered an "essential operative element[]" of the settlement, National Viatical and Torchia's obligation to pay Universal Settlements $1 million was not rendered "ineffective or impossible" as Michigan law requires. *See id.* Thus, their performance is not excused.

**D. The Consent Judgment**

Following National Viatical and Torchia's default, the district court entered the $5 million consent judgment against them, and they challenge this decision on several grounds. First, they argue that they did not receive "formal notice" of default, such that the entry of judgment was premature. But the record shows that National Viatical and Torchia received notice on August 31, 2012, and that they failed to cure within the fourteen-day period provided by the district court. National Viatical and Torchia insist that they were entitled to "formal notice," but they have failed to identify what type of notice was appropriate and cannot show that the settlement agreement required "formal notice." Therefore, Universal Settlements' motion to enforce the consent judgment, filed on September 20, 2012, was not premature.

Second, National Viatical and Torchia claim the $5 million judgment is a penalty, designed to coerce performance. A consent judgment is a hybrid of a contract and a judicial act. *Local No. 93, Int'l. Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519 (1986). It mirrors a contract in that it reflects "an agreement by the parties," and it is a judicial act because it "places the power and prestige of the court behind the compromise struck by the parties." *Williams v. Vukovich*, 720 F.2d 909, 920 (6th Cir. 1983). Courts have an obligation to "protect the integrity of the decree with its contempt powers." *Id.* Importantly, "[f]ederal courts are not reduced to approving consent decrees and hoping for compliance. Once entered, a consent decree may be enforced." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 440 (2004).

National Viatical and Torchia ask this court to construe the consent judgment as a contract and apply traditional contract principles to determine whether the agreement is

enforceable. Whether we construe the judgment as a judicial act or a contract, the district court correctly held that the judgment may be enforced.

As a judicial act, consent judgments must be "strictly construed to preserve the bargained for position of the parties." *Vukovich*, 720 F.2d at 920. In this respect, courts have "very limited authority to alter the terms of any consent judgment . . . . The only facts and circumstances that [the Sixth Circuit] has ruled warrant relief from a consent judgment are some showing of the existence of fraud or a mutual mistake of fact." *Mallory v. Eyrich*, 922 F.2d 1273, 1280 (6th Cir. 1991) (internal quotation marks omitted); *see also Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630 (1989) ("One who attacks a settlement must bear the burden of showing that the contract he had made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted."). Simply put, National Viatical and Torchia have not challenged the judgment on grounds of mistake or fraud, nor have they presented any other facts permitting the court to set aside the judgment.[3]

Even if we construe the judgment as a contract, we discern no error in the district court's decision. National Viatical and Torchia have not demonstrated that the judgment was designed to be a penalty or a liquidated damages provision. Properly understood, the judgment represents an express agreement by National Viatical and Torchia to pay Universal Settlements $5 million if they failed to abide by the settlement. By agreeing to this provision, they are bound by its terms. Furthermore, as the district court correctly explained, the judgment was reasonable

---

[3] National Viatical and Torchia argue that Federal Rule of Civil Procedure 60(b)(6) allows the court to set aside the judgment for "any other reason that justified relief." However, "relief under this section requires a showing of exceptional or extraordinary circumstances," *E. Brooks Books, Inc. v. City of Memphis*, 633 F.3d 459, 465 (6th Cir. 2011), such as a change in controlling law, together with "some other special circumstance." *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). Because National Viatical and Torchia have not offered the type of "exceptional or extraordinary circumstances" contemplated by Rule 60(b)(6), we will not set aside the judgment.

because it related directly to the "losses the parties considered and agreed might be sustained." We find no reason to construe the consent judgment as a penalty clause.

### III. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment and affirm the court's order entering the consent judgment.